# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**KATRINE ZORN, ERIN DALEY,**    **CASE NO: 6:16-cv-000001-Orl-18-TBS**
**WALTER POOLEY, KAREN GILBERT,**
**JERRY JORDAN, MARK STEIN and**
**ROSELYN MARTINEZ-ECK,**

   **Plaintiffs,**          **[DISPOSITIVE MOTION]**

**vs.**

**CITY OF CASSELBERRY and**
**WILLIAM McNEIL,**

   **Defendants.**

_____/

## DEFENDANT WILLIAM McNEIL'S MOTION TO DISMISS AND/OR MOTION FOR MORE DEFINITE STATEMENT AND MOTION TO STRIKE

Defendant William McNeil ("McNeil"), by and through undersigned counsel, hereby moves this Court for an order dismissing Plaintiffs' Third Amended Complaint. Additionally, or in the alternative, McNeil requests a more definite statement as to certain claims brought against him as well as an order striking certain portions of the Third Amended Complaint, which violate the prior agreement of counsel and exceed the leave granted to Plaintiffs by the court to further amend their complaint. McNeil's arguments are based upon the following grounds:

### Introduction and Procedural History

Seven Plaintiffs bring this action against the City of Casselberry and the former chief of police for the Casselberry Police Department, William McNeil. Plaintiffs claim they were the victims of harassment, discrimination, and retaliation based on their respective genders, ages, and national origins while employed by the Casselberry Police Department. In the 25-count Third Amended Complaint, the Plaintiffs assert multiple federal and state law claims against the

Defendants. The Defendants timely removed this action to federal court on January 4, 2016. As explained below, this is the 7th complaint filed by the Plaintiffs. As in the prior complaints, this too fails to state a claim against McNeil.

This case has taken a long and tortured path to reach this point of the proceeding. Suit was initially filed on November 21, 2014, in the Eighteenth Judicial Circuit, in and for Seminole County, Florida, in the case styled *Katrine Zorn, et al. v. William McNeil and the City of Casselberry*, Case No. 2014-CA-003112 ("State Court Action"). The complaint has been the subject of several motions to dismiss and has been amended on numerous occasions. Although the operative complaint is titled the "Third Amended Complaint," it is actually the 5th complaint filed in the State Court Action. Moreover, the operative complaint differs significantly from the proposed Third Amended Complaint that was submitted in the State Court Action along with Plaintiff's request seeking leave for further amendment.[1] The operative complaint contains the same deficiencies that have been addressed in the prior motions to dismiss. It also resurrects claims against McNeil that were previously dropped upon stipulation and agreement by the Plaintiffs.

Plaintiffs' inefficient pleading approach has not been limited to the State Court Action. While continuing to litigate their state law claims in the State Court Action, Plaintiffs filed a separate action in federal court on June 23, 2015, asserting only federal claims. *See* Case No. 6:15-cv-1033-Orl-28-TBS. Plaintiffs amended their federal complaint on October 7, 2015. The Defendants moved to dismiss that amended complaint on substantive and procedural grounds. After extensive briefing by McNeil and the City, Plaintiffs voluntarily dismissed the separate federal court action on December 14, 2015. Consequently, when combined with the earlier

---

[1] On December 3, 2015, after being granted leave to file another amended complaint in the state court proceeding, Plaintiffs filed the current Third Amended Complaint. The Third Amended Complaint added another Plaintiff. Moreover, the Third Amended Complaint asserted federal claims for the first time in this action.

2

federal action, the operative complaint now pending before this Court is the 7th complaint filed by the Plaintiffs.

It bears mentioning that the Third Amended Complaint was filed with the benefit of extensive discovery having already been completed. Depositions were conducted over 27 separate days. Those include the depositions of every Plaintiff (except for the new Plaintiff, Roselyn Martinez-Eck), the Defendants, and multiple witnesses. Substantial written discovery has also been completed, including interrogatories, requests to produce, requests for admission, and serial public records requests served by the Plaintiffs on the City. Any facts that could even remotely support a cause of action have already been discovered and are listed in the complaint. Nonetheless, as in the 6 complaints that preceded this one, the Third Amended Complaint contains critical shortcomings that render it subject to dismissal.

## Third Amended Complaint

The Third Amended Complaint consists of 350 paragraphs and 25 counts for relief. Counts I through X include claims under Florida law. Counts I, II, and III allege violations of the Florida Civil Rights Act against the City. Count IV alleges claims of invasion of privacy against McNeil; Count V alleges claims of assault against McNeil; Count VI alleges claims of intentional infliction of emotional distress against McNeil; Count VII alleges claims of negligent supervision and retention against the City; Count VIII alleges claims of negligent infliction of emotional distress against the City; Count IX alleges violations of Florida's Public Whistleblower Act against the City; and Count X alleges violations of Florida's Public Records Act against the City.

Counts XI through XV allege claims under federal law. Counts XI, XII, and XIII allege violations of Title VII against the City under sexual harassment, discrimination, and retaliation

theories; Counts XIV and XV allege violations of the ADEA against the City under theories of discrimination and retaliation; Count XVI alleges violations of the Equal Protection Clause under § 1983 against the City; Count XVII alleges violations of the First Amendment under § 1983 against the City; Counts XVIII and XIX allege violations of § 1981 against the City under theories of discrimination and retaliation; and Counts XX through XXV allege violations of the Equal Protection Clause under § 1983 against McNeil.

## Memorandum of Law

### I.      Standard of Review.

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face," such that it pushes the claim "across the line from conceivable to plausible . . . ." *Id.* (quoting *Twombly*, 550 U.S. at 570). Without the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Id.* at 1949.

### II.     Plaintiffs fail to state a claim against McNeil under Florida common law.

The gravamen of this lawsuit is the Plaintiffs' various claims that they were harassed by McNeil while working for the City. However, it is well-settled that Florida common law does not recognize a cause of action for harassment in the workplace. *Castleberry v. Edward M.*

*Chadbourne, Inc.,* 810 So. 2d 1028, 1030 (Fla. 1st DCA 2002) ("Florida does not recognize a common law cause of action for negligent failure to maintain a workplace free of sexual harassment."); *City of Miami Beach v. Guerra*, 746 So. 2d 1159 (Fla. 3d DCA 1999) (same); *Scelta v. Delicatessen Support Servs., Inc.,* 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999) (same); *see also Ayubo v. City of Edgewater,* 2009 WL 113381 (M.D. Fla. 2009) (dismissing plaintiff's negligent supervision and training claims based on racial discrimination and holding that Florida does not recognize a common law claim for negligent failure to maintain a workplace free of discrimination).

Plaintiffs have attempted to skirt this controlling law by couching their claims against McNeil under other common law theories, including Invasion of Privacy (Count IV); Assault (Count V); and Intentional Infliction of Emotional Distress (Count VI). But Plaintiffs have failed to allege facts that would support the claims asserted, and the Third Amended Complaint is therefore subject to dismissal.

As a threshold matter, Plaintiffs' claims for Invasion of Privacy (Count IV) and Assault (Count V) fail to allege that McNeil acted in bad faith, with malicious purpose, or in a manner exhibiting willful disregard of human rights, safety, or property. These allegations are necessary if Plaintiffs are to overcome McNeil's entitlement to sovereign immunity.[2] Fla. Stat. § 768.28(9)(a); *Burnett v. Miami Dade Cty.*, 2007 WL 1225451, at *2 (S.D. Fla. 2007) (finding that claims of assault and battery do not necessarily involve the level of egregious conduct necessary to overcome an individual's entitlement to sovereign immunity). The immunity

---

[2] Florida's limited waiver of sovereign immunity provides: "No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).

afforded to McNeil "is both an immunity from liability and an immunity from suit . . . ." *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006). Thus, the failure to make these necessary allegations renders the complaint subject to dismissal.

In addition to this pleading deficiency, Plaintiffs have also failed to allege facts that would support each of the common law torts stated against McNeil.

### A. Invasion of Privacy.

Count IV purports to state a claim for invasion of privacy and is brought by Plaintiffs Zorn, Gilbert, Jordan, and Stein. To state a claim for invasion of privacy, Plaintiffs must demonstrate that McNeil committed a physical or electronic intrusion into their "private quarters."[3] *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003) (quoting *Agency for Health Care Administration v. Associated Industries of Florida, Inc.*, 678 So. 2d 1239, 1252 n. 20 (Fla. 1996)). To constitute an invasion of privacy, the intrusion must be highly offensive to a reasonable person. *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1309 (M.D. Fla.) *aff'd*, 627 F.3d 833 (11th Cir. 2010).

The Florida Supreme Court has repeatedly held that "the tort of invasion of privacy was not intended to be duplicative of some other tort." *Ginsberg*, 863 So. 2d at 162 (citing *Cason v. Baskin*, 155 Fla. 198, 20 So. 2d 243 (Fla. 1944). "Rather, this is a tort in which the focus is the right of a private person to be free from public gaze." *Id.* As the Florida Supreme Court explained, "[t]he intrusion to which this refers is into a 'place' in which there is a reasonable expectation of privacy and is not referring to a body part." *Id.*

---

[3] Other theories for invasion of privacy claims include: (1) appropriation – the unauthorized use of a person's name or likeness to obtain some benefit; and (2) public disclosure of private facts – the dissemination of truthful private information which a reasonable person would find objectionable. Plaintiffs have previously conceded they are not making a claim under either of these alternate theories.

To survive a motion to dismiss, Plaintiffs must allege sufficient facts demonstrating that McNeil's behavior was so outrageous that it went beyond all possible bounds of decency and would be highly offensive to a reasonable person. *Oppenheim,* 695 F. Supp. 2d at 1309. This Court in *Oppenheim* analyzed the state of Florida law on invasion of privacy claims as follows:

> In measuring the unacceptable conduct upon which a claim is made, causes of action for invasion of privacy "share certain similarities" with claims for intentional infliction of emotional distress. [*Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062–63 (Fla. 5th DCA 1991)] (applying intentional infliction of emotional distress standard to determine offensiveness of conduct in intrusion claim). "The threshold test to be followed in assessing behavior claimed to constitute the 'intentional infliction of emotional distress,' is whether such behavior is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *Id.* (quotation omitted). "[A]n evaluation of the claimed misconduct must be undertaken to determine, as objectively as is possible, whether it is 'atrocious, and utterly intolerable in a civilized community.'" *Id.* (quotation omitted). "That burden falls to the judiciary—it is a matter of law, not a question of fact." *Id.* (quotation omitted); *see also id.* at 1063 (holding trial court properly dismissed complaint which failed to allege conduct \*1310 sufficiently outrageous to constitute intrusion); *Vance v. Southern Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1575 n. 7 (11th Cir.1993) (under Florida law, whether conduct is sufficiently outrageous is a "legal question in the first instance for the court to decide as matter of law"); *but see Harms v. Miami Daily News, Inc.*, 127 So. 2d 715, 718 (Fla. 3d DCA 1961) (in action for public disclosure of private facts, question of whether remarks published by newspaper would be objectionable to reasonable person was for the jury).

*Id.* at 1309-10. As noted above, whether the conduct alleged is sufficiently outrageous to state a claim for invasion of privacy is a question of law, not a question of fact. *Id.*

## 1.    Plaintiff Zorn

Plaintiff Zorn's claims arise from a two-year relationship she had with McNeil, during which Zorn and McNeil periodically traded nude pictures and videos via text message. (Third Am. Cmpl. ¶¶ 21-27, 39.) Zorn claims McNeil continually texted and called her on the telephone while she was at home and while she was spending time with her horses. (Third Am. Cmpl.

¶ 34.) She also claims McNeil would use the Tucson system to find out where she was while she was working.[4] (Third Am. Cmpl. ¶ 37.) Zorn's factual allegations are contained within paragraphs 20 through 47 of the Third Amended Complaint.

Zorn does not offer any facts indicating that McNeil *physically* intruded into her private quarters. Rather, it appears Zorn is claiming that McNeil committed an electronic intrusion when he sent her text messages and when he used the Tucson system to find out her location while she was on duty. Neither of these alleged facts supports a claim for invasion of privacy.

As an initial matter, neither of these alleged facts have anything to do with subjecting Zorn to public gaze. *Ginsberg,* 863 So. 2d at 162 ("[Invasion of Privacy] is a tort in which the focus is the right of a private person to be free from public gaze."). It is unreasonable to suggest, in this age of connectivity, that a reasonable expectation of privacy can be violated when a cell phone equipped with text message capability (and often used for that purpose) receives text messages. *See Oppenheim,* 695 F. Supp. 2d at 1310 (holding that a series of belligerent and harassing phone calls by a debt collector were insufficient to state a claim for invasion of privacy). This is especially true when, as Zorn admits, she used her cell phone to communicate with McNeil in the same way, sending her own variety of indecent photographs and videos.

It is also disingenuous to suggest that any law enforcement officer would have a reasonable expectation of privacy of their whereabouts while on duty, when every law enforcement officer within the county has access to that information through the Tucson system. At a minimum, a law enforcement officer's use of the Tucson system to learn the location of other law enforcement officers while on duty – the very reason for the existence of the Tucson system – cannot be categorized as conduct so egregious that, as a matter of law, it went "beyond

---

[4] Although not described in the complaint, Zorn explained in her deposition that the Tucson system is a county-wide program which allows all law enforcement officers at any given time to see the locations of other law enforcement officers while they are on duty.

all possible bounds of decency and would be highly offensive to a reasonable person." *Oppenheim,* 695 F. Supp. 2d at 1309. Zorn has failed to state a claim for invasion of privacy.

## 2.    Plaintiff Gilbert

Plaintiff Gilbert claims that she was subjected to McNeil's "sexually aggressive and harassing behavior." (Third Am. Cmpl. ¶ 65.) She explains that McNeil occasionally wrote her poems, asked other employees if Gilbert would be interested in a relationship with him, complimented the smell of her perfume, spent time around her desk, and, on several occasions, left a voice message on her City phone at "odd hours." (Third Am. Cmpl. ¶ 66.) McNeil also sent her two messages on the dating website Match.com. (Third Am. Cmpl. ¶ 66.) Gilbert's allegations are contained within paragraphs 63 through 76 of the Third Amended Complaint.

Gilbert has failed to state a claim for invasion of privacy. She has not demonstrated that McNeil committed a physical or electronic intrusion into a private place in which she held a reasonable expectation of privacy. *Ginsberg,* 863 So. 2d at 162. She has not alleged that McNeil's conduct caused her to be subject to "public gaze." *Id.* She has also not alleged facts demonstrating conduct that is sufficiently outrageous that it went beyond all possible bounds of decency. *Oppenheim,* 695 F. Supp. 2d at 1309. At most, Gilbert alleges that McNeil was interested in dating her. Notably absent are any allegations that McNeil ever said or did anything that was obscene or indecent, or, perhaps most importantly, that Gilbert ever told McNeil his behavior was making her uncomfortable. Gilbert's allegations fall far short of a claim for invasion of privacy.

## 3.    Plaintiff Jordan

Plaintiff Jordan does not even attempt to allege facts demonstrating how he purportedly suffered an invasion of privacy. His claims are grounded in allegations of harassment on the

basis of age and gender. He complains that McNeil would constantly ask him when he was going to retire and that McNeil "allowed" other people to publicly demean Jordan's age and stature. (Third Am. Cmpl. ¶¶ 94-95.) He also claims that McNeil posed stuffed animals in a sexual position in Jordan's office. (Third Am. Cmpl. ¶ 97.) Jordan's allegations are contained within paragraphs 93 through 112 of the Third Amended Complaint.

Jordan's allegations do not suggest that McNeil committed a physical or electronic intrusion into his "private quarters." *Ginsberg*, 863 So. 2d at 162 (Fla. 2003). There are no allegations that McNeil caused Jordan to be subject to "public gaze." *Id.* Jordan also fails to allege conduct that is sufficiently outrageous that went beyond all possible bounds of decency. *Oppenheim*, 695 F. Supp. 2d at 1309. His allegations do not come close to stating a claim for invasion of privacy.

### 4.  Plaintiff Stein

Plaintiff Stein complains that McNeil bullied and harassed him on the basis of his age. (Third Am. Cmpl. ¶ 114.)  He offers a list of practical jokes that were done around Stein's desk as examples of this harassing conduct. (Third Am. Cmpl. ¶ 118.) Examples of those practical jokes include hiding Stein's keys and removing his office chair. *Id.* Stein's allegations are contained within paragraphs 113 through 126 of the Third Amended Complaint.

Stein's allegations fail to demonstrate that McNeil committed a physical or electronic intrusion into his "private quarters." *Ginsberg*, 863 So. 2d at 162 (Fla. 2003). There are no allegations that McNeil caused Stein to be subject to "public gaze." *Id.* Stein also fails to allege conduct that is sufficiently outrageous that it went beyond all possible bounds of decency. *Oppenheim*, 695 F. Supp. 2d at 1309. Stein has failed to state a claim for invasion of privacy.

### B.     Assault.

Count V attempts to state a claim for assault against McNeil and is brought by Plaintiffs Zorn, Daley, Gilbert, Jordan, and Stein. Plaintiffs allege they were in fear of McNeil due to his "temper." However, the Third Amended Complaint does not allege that McNeil threatened to use force or actually used force against any Plaintiff. In the absence of such allegations, Plaintiffs have failed to state a cause of action for assault.

Assault is defined as "an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril." *Sullivan v. Atlantic Federal Sav. & Loan Ass'n.*, 454 So. 2d 52, 54 (4th DCA 1984); *Lay v. Kremer,* 411 So. 2d 1347 (Fla. 1st DCA 1982). The claim "must be premised upon an affirmative act – a threat to use force, or the actual exertion of force." *Id.*

To be placed in apprehension necessary to justify an assault claim, "the other must believe that the act may result in imminent contact unless prevented from so resulting by the other's self-defensive action or by his flight or by the intervention of some outside force." *Abella v. Simon*, 831 F. Supp. 2d 1316, 1341 (S.D. Fla. 2011) *vacated in part on other grounds,* 482 F. App'x 522 (11th Cir. 2012) (citing Restatement (Second) of Torts § 24 (2005)). Because of the intent requirement, "not everything that causes apprehension is an assault." *Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d 1137, 1142 (N.D. Fla. 2005) *aff'd*, 189 F. App'x 941 (11th Cir. 2006). "In short, conduct that creates 'a risk, short of substantial certainty, is not the equivalent of intent.'" *Id.* at 1142, (citing *Spivey v. Battaglia,* 258 So. 2d 815, 817 (Fla.1972)).

### 1.     Plaintiff Zorn

Plaintiff Zorn does not allege facts to support a claim for assault. She claims that McNeil had a bad temper and would yell, scream, and curse at her. (Third Am. Cmpl. ¶ 31.) She alleges

that due to his temper, she feared McNeil may harm her. (Third Am. Cmpl. ¶ 32.) Finally, she alleges that on one occasion, McNeil "threw an object at her while she was in his office." (Third Am. Cmpl. ¶ 31.) These allegations do not state a claim for assault.

Zorn does not allege that McNeil ever threatened to use force against her. She also does not allege that McNeil actually used force against her. The closest she comes is by alleging that McNeil threw something "at" her. However, she does not allege that McNeil intended to hit her with the object or that McNeil throwing the object caused her to be in "reasonable fear of imminent peril." *Sullivan*, 454 So. 2d at 54. Those allegations would be necessary to state a claim for assault. Zorn has not made those allegations, because she cannot.[5]

## 2.    Plaintiffs Daley, Gilbert, Jordan, and Stein

Plaintiffs Daley, Gilbert, Jordan, and Stein have also failed to allege any facts demonstrating they were victims of McNeil's purported assault. Each of their claims seems to rest upon their alleged anxiety caused by McNeil's reputation for having a temper. None of these Plaintiffs allege that McNeil threatened force or actually used force against them. Being in fear of someone because of their generalized temper, without more, does not support a claim of assault. *Barnes*, 410 F. Supp. 2d at 1142 ("not everything that causes apprehension is an assault.").

Plaintiff Daley claims that McNeil would comment on how nice she looked in uniform and that he sent her "feeler" text messages. (Third Am. Cmpl. ¶ 52.) She characterizes this as "sexually aggressive behavior" and claims that it put her in fear of imminent danger of unwelcome and offensive physical contact by McNeil. (Third Am. Cmpl. ¶ 51.) However, she

---

[5] This is an important and glaringly obvious omission in Zorn's assault claim. She has not made the sufficient allegations because she cannot do so without conflicting with her prior sworn testimony in this case. Zorn should be required to make the necessary factual allegations and run the risk of impeachment and potential sanctions, or, more appropriately, she should abandon this claim altogether.

does not allege that McNeil physically contacted her or that he ever threatened to do so. Her allegations fail to demonstrate a threatened or actual use of force that is required to bring an assault claim.

Plaintiff Gilbert's claims are equally thin. She claims that McNeil's "sexually aggressive behavior" – i.e., asking her on a date, writing her poems, and complimenting the smell of her perfume – caused her to fear that she was in imminent danger of unwelcome and offensive physical contact. (Third. Am. Cmpl. ¶ 75.) This does not state a claim for assault.

Plaintiff Jordan also does not make the necessary factual allegations. He merely alleges that McNeil had a temper and could be heard screaming and cursing at others on the telephone. (Third Am. Cmpl. ¶¶ 98, 99.) Jordan does not have a claim for assault.

Plaintiff Stein also does not make the necessary factual allegations. Stein alleges that he felt embarrassed and disrespected by the practical jokes McNeil allegedly played around Stein's desk. (Third. Am. Cmpl. ¶¶ 118-120.) Stein claims that he was afraid McNeil would change Stein's schedule or transfer him to another department. (Third. Am. Cmpl. ¶ 121.) Stein does not claim that McNeil ever used force against him. He does not claim that McNeil ever threatened to use force against him. Stein makes absolutely no allegations to support a claim for assault.[6]

## C. Intentional Infliction of Emotional Distress.

Count VI attempts to state a claim for intentional infliction of emotional distress ("IIED") and is brought by Plaintiffs Zorn, Pooley, and Stein. Plaintiffs have failed to allege <u>any</u> physical touching by McNeil and have not alleged conduct so "outrageous" as to constitute IIED. Dismissal is proper at this juncture as "Florida courts ... routinely determine on motions for

---

[6] Like Zorn, Stein cannot make the necessary factual allegations without directly conflicting with his sworn testimony given in this case. Plaintiffs should take a hard look at the allegations made in the complaint as compared against their sworn testimony to ensure that a factual basis exists for these claims, as required by Rule 11(b) of the Federal Rules of Civil Procedure.

dismissal ... whether the plaintiff claiming [IIED] has alleged sufficiently outrageous conduct." *Mundy v. Southern Bell Telephone and Telegraph Co.*, 676 F. 2d 503, 506, n.4 (11th Cir. 1982).

Florida law does not recognize a cause of action for IIED based upon alleged acts of verbal abuse, sexual and otherwise, in the workplace. *Johnson v. Thigpen*, 788 So.2d 410, 412 (Fla. 1st DCA 2001); *see also Ponton v. Scarfone*, 468 So. 2d 1009 (Fla. 2d DCA 1985) (utterances designed to induce employee to join in a sexual liaison did not meet the threshold required to establish intentional infliction of emotional distress); *see also Lay v. Roux Laboratories*, 379 So. 2d 451 (Fla. 1st DCA 1980) (allegations of threatening Plaintiff with her job and using humiliating language, vicious verbal attacks and racial epithets were insufficient to serve as a predicate for the independent tort of intentional infliction of emotional distress). *Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1296 (M.D. Fla. 2006) ("the repeated use of racial slurs and unjustified delays, while reprehensible, does not meet the high standard imposed by Florida courts for intentional infliction of emotional distress claims."); *Williams v. Worldwide Flight Svcs. Inc.*, 877 So. 2d 869 (Fla. 3d DCA 2004) (supervisor's alleged conduct of calling African-American employee a "nigger" and "monkey" and constantly threatening employee with job termination for no apparent reason did not rise to the level that could be reasonably regarded as so extreme and outrageous as to permit employee to recover damages for intentional infliction of emotional distress).

To state a claim for IIED under Florida law, Plaintiff must allege that: (1) defendants negligently or recklessly inflicted mental suffering, (2) by outrageous conduct, (3) defendants conduct must have caused the suffering; and (4) the suffering must have been severe. *See Scelta*, 57 F. Supp. at 1357 (*citing Hart v. United States*, 894 F.2d 1539. 1548 (11th Cir. 1990). "Although there is no definitive example of what constitutes 'outrageous conduct' for the

purpose of maintaining a cause of action for [IIED], Florida case law on the subject has evinced a comparatively high standard." *Golden v. Complete Holding's Inc.*, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993). The Florida Supreme Court has described the level of outrageous conduct required to state a claim for IIED as follows:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Metropolitan Life Insurance Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985) (quoting Restatement (Second) of Torts § 46 (1965)).

This Court has stated "outrageous" conduct is usually something other than sexual discrimination or sexual harassment. *Ball v. Heilig-Meyers Furniture Co.*, 35 F. Supp. 2d 1371, 1376 (M.D. Fla. 1999) (*citing Golden*, 818 F. Supp. at 1499 (M.D. Fla. 1993) (stating that claims for intention infliction of emotional distress relating to sexual harassment have been repeatedly rejected)). As this Court noted in *Goggin v. Higgins*, 2013 WL 6244536, at *2-3 (M.D. Fla. 2013), "Florida courts are reluctant to allow IIED claims based on sexual harassment to proceed and do so in limited circumstances." Indeed, "the touchstone of these cases is the presence of relentless *physical*, as well as verbal, harassment. It is the element of offensive, *non-negligible physical contact* that, when coupled with persistent verbal abuse and threats of retaliation, can under some facts and circumstances constitute conduct of sufficient outrageousness to support a claim for intentional infliction of emotional distress." *Id.*, citing *Vernon v. Medical Management Associates of Margate, Inc.*, 912 F. Supp. 1549, 1559 (S.D. Fla. 1996) (emphasis supplied).

The standard to survive a motion to dismiss is sufficient allegations of "*relentless physical, as well as verbal harassment." Vernon v. Med. Mgmt. Associates of Margate, Inc.*, 912 F. Supp. 1549 (S.D. Fla. 1996) (emphasis added). The *Vernon* Court explained that "[i]t is the element of offensive, *non-negligible* physical contact that, when coupled with *persistent* verbal abuse and threats of retaliation, can *under some facts and circumstances* constitute conduct of sufficient outrageousness to support a claim for [IIED]." *Id.* (emphasis added). Thus, unless the allegations in the complaint meet the standard of "*relentless physical, as well as verbal, harassment*," a claim for IIED in the employee context will not stand. Plaintiffs' allegations do not approach this standard.

In *Johnson*, 788 So. 2d at 412, the court let an IIED claim proceed that was based on the defendant's sexual harassment that included a nude picture of himself, repeatedly touching the plaintiff's breasts, running a pencil up the plaintiff's thigh, forcibly placing her hand on his crotch, as well as dictating to the plaintiff while urinating in the bathroom in his office. Likewise, in *Urquiola v. Linen Supermarket, Inc.*, 1995 WL 266582, at *4 (M.D. Fla. 1995), the Court let an IIED claim proceed that was based on the defendant's sexual harassment that included numerous occasions of kissing and groping the plaintiff, as well as an attempted rape.

However, courts routinely reject IIED claims that are not based upon allegations of significant physical contact combined with a history of substantial verbal abuse. In *Ball v. Helig– Meyers Furniture Co.*, 35 F. Supp. 2d 1371, 1376 (M.D. Fla. 1999), the defendant's conduct included rubbing his penis across the plaintiff's buttocks, squeezing the plaintiff's buttocks while making a suggestive comment, and trying to touch or rub up against her breasts. The defendant also tried to enter the room when plaintiff was breastfeeding and asked her to "feed him." *Id.* When the defendant learned plaintiff was attending school to become a massage therapist, he

asked her "how much for a blow job?" and "do you massage the 'nads'?" *Id.* In comparing these facts against the rigorous standard required to state a claim for IIED, this Court held that "while the Defendant's store manager's alleged acts were offensive, when measured against case law, the facts do not reach the necessary level of 'outrageousness' to survive the Motion to Dismiss." *Id.* (citing *Stockett v. Tolin*, 791 F. Supp. 1536 (S.D. Fla. 1992) (holding that touching Plaintiff's breasts and buttocks several times per week was not sufficiently outrageous)).

Likewise, in *Blount v. Sterling Healthcare Group*, 934 F. Supp. 1365, 1370–71 (S.D. Fla. 1996), the court dismissed plaintiff's IIED claim where the defendant's alleged conduct included hugging, several instances of rubbing the plaintiff's breasts with his arm, and one instance of massaging the back of the plaintiff's neck, as well as telling sexually and racially explicit jokes and making suggestive comments to the plaintiff. In *Howry v. Nisus, Inc.*, 910 F. Supp. 576, 580–81 (M.D. Fla. 1995), this Court held that an employer physically touching both employees and himself in a suggestive manner, using obscene language, and commenting on sex organs, was insufficient under Florida law to state a claim for intentional infliction of emotional distress.

In the instant case, none of the Plaintiffs have alleged <u>any</u> physical contact by McNeil. When compared to the allegations in the cases above, Plaintiffs' allegations do not come near the level of physical and/or verbal contact necessary to rise to the level of outrageousness as required under Florida law.

### 1.   Plaintiff Zorn

Plaintiff Zorn's IIED claim is based on the allegations that McNeil screamed at her, threw something "at" her, and "stalked" her while she was at home or engaged in personal activities. (Third Am. Cmpl. ¶¶ 28, 31, 34, 175.) Although not clear, the Third Amended

Complaint may also be read to infer that Zorn's IIED claim arises from her mutual texting relationship with McNeil. These allegations do not state a claim for IIED.

As noted above, allegations of sexual harassment and verbal abuse are insufficient to state a claim for IIED. *Johnson*, 788 So. 2d at 13*; see also Ponton*, 468 So. 2d 1009; *Lay*, 379 So. 2d 451. Similarly, allegations that McNeil would scream and curse and, on one occasion, threw an object do not state a claim for IIED. *Lay*, 379 So. 2d 451. The allegation that McNeil "stalked" Zorn – that is, allegedly calling Zorn on the telephone and using the Tucson system to see her whereabouts – do not state a claim for IIED. Zorn has not alleged *the persistent verbal and physical abuse* required by Florida courts to support a claim for IIED. As stated in *Lay*, "vulgarities and abusive language are commonplace when tempers flare" however, they are insufficient to serve as a predicate for the independent tort of IIED. *Lay*, 379 So. 2d 452-53.

### 2.  Plaintiff Pooley

Plaintiff Pooley bases his IIED claim on allegations of race and age discrimination. He claims that McNeil "and others" made discriminatory comments about Hispanics. (Third Am. Cmpl. ¶ 78.) He also claims that McNeil would ask when Pooley was going to retire, would tell him "I can't understand you" as a result of Pooley's accent, and would tell Pooley that he needed to learn the language if he was going to stay in America. (Third Am. Cmpl. ¶ 81.) These allegations do not state a claim for IIED.

Florida case law is rife with allegations far more severe than these that courts held to be insufficient to state a claim for IIED. *See, e.g., Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1296 (M.D. Fla. 2006) ("the repeated use of racial slurs and unjustified delays, while reprehensible, does not meet the high standard imposed by Florida courts for intentional infliction of emotional distress claims."); *Vamper v. United Parcel Service. Inc.*, 14 F. Supp.

1301 (S.D. Fla. 1998) (dismissing IIED claims where plaintiff alleged he was wrongfully threatened with termination and called a "nigger" in Spanish); *Williams v. Worldwide Flight Svcs. Inc.*, 877 So. 2d 869 (Fla. 3d DCA 2004) (supervisor's alleged conduct of calling African-American employee a "nigger" and "monkey" and constantly threatening employee with job termination for no apparent reason did not rise to the level that could be reasonably regarded as so extreme and outrageous as to permit employee to recover damages for intentional infliction of emotional distress.); *See, e.g., Lay*, 379 So. 2d at 452 (allegations of "humiliating language, vicious verbal attacks, [and] racial epithets" were insufficient to state a claim for IIED).

In *Vance v. Southern Bell Telephone and Telegraph Co.*, 983 F.2d 1573 (11th Cir. 1993), the plaintiff filed suit against her former employer for discrimination on the basis of race. The plaintiff claimed Southern Bell's offensive conduct included hanging a rope "noose" over the plaintiff's work station, suspending her "for an offense for which white employees were not suspended," and refusing "to treat her equally in disciplinary proceedings unless she dismissed charges of racial discrimination then pending before a local government agency." *Id.* at 1574 n.2. In upholding the lower court's dismissal of the plaintiff's IIED claim, the court held that the acts alleged by the plaintiff "do not rise to the level of extremity or outrageousness required to sustain [the plaintiffs] claim for IIED." *Id.* at 1575 n.7. Likewise, Pooley's allegations fall far short of the outrageousness required to state a claim for IIED.

### 3.    Plaintiff Stein

Plaintiff Stein's claim of IIED is premised upon the practical jokes that were played around his workspace, such as hiding his keys, removing his office chair, etc. (Third Am. Cmpl. ¶ 118). He claims, without explanation, that these practical jokes were motivated by a bias against Stein's age. (Third Am. Cmpl. ¶ 114.) Stein does not allege any physical contact by

McNeil, but nonetheless alleges McNeil's actions caused him embarrassment. (Third Am. Cmpl. ¶ 120.) Be that as it may, and as reflected in the numerous case law examples listed above, Stein's allegations do not approach the rigorous standard required to state a claim for IIED.

### III.    Plaintiffs fail to state a claim under the Equal Protection clause of the 14th Amendment.

Plaintiffs Zorn, Daley, Gilbert, Pooley, Jordan, and Stein have each brought a § 1983 Equal Protection claim against McNeil, consisting of Counts XX – XV, respectively. In each of those claims, Plaintiffs loosely allege that McNeil violated their constitutional rights "in numerous ways, including the acts identified in [each Plaintiffs' specific factual allegations]." Plaintiffs further allege, in boilerplate fashion, that McNeil discriminated against them on the basis of gender, national origin, and age. These allegations fail to apprise McNeil of the claims made against him and fail to state a claim for an Equal Protection violation.

### A.    Plaintiffs' constitutional claims must be dismissed because they fail to comport with Federal Rules of Civil Procedure 8 and 10, thereby depriving McNeil of fair notice of Plaintiffs' claims.

It is impossible for McNeil to discern the precise constitutional theories that are being presented against him. Although each Plaintiff has brought a separate § 1983 count, they have impermissibly lumped together into that count each of their prior allegations which are based upon numerous, separate occurrences. By referring McNeil back to <u>all</u> of the Plaintiffs' factual allegations, as opposed to specific paragraphs, Plaintiffs are presumably alleging that all conduct involved in this case violated the Equal Protection Clause. If Plaintiffs are truly intending to allege that every single interaction they have alleged with McNeil over a series of years violated the Constitution, then numerous additional arguments would need to be raised to defend against these claims that are not otherwise readily apparent from reading the § 1983 causes of action.

For example, numerous Plaintiffs claim in their section of factual allegations that McNeil retaliated against them. (Third Am. Cmpl. ¶¶ 29, 62, 91, 114.) However, the Eleventh Circuit "has held that a claim of gender-based retaliation 'simply does not implicate the Equal Protection Clause.'" *Owens v. Jackson Cnty. Bd. of Educ.*, 561 F. App'x 846, 848 (11th Cir. 2014) (quoting *Watkins v. Bowden*, 105 F. 3d 1344, 1354 (11th Cir. 1997). As such, to the extent that each Plaintiff is attempting to assert a retaliation claim against McNeil under the Equal Protection Clause, such claims should be dismissed. *Mathis v. City of St. Augustine Beach*, 2015 WL 1470762, at *20 (M.D. Fla. Mar. 31, 2015) (dismissing § 1983 claim to the extent that the plaintiff sought damages based on an equal protection retaliation claim).

Federal Rule of Civil Procedure 10 provides that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count" when doing so would promote clarity. The Eleventh Circuit explained that Federal Rules of Civil Procedure 8 and 10 work together:

> to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

*Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996).

Plaintiffs have failed to comply with this simple rule to the detriment of any attempt at figuring out exactly what claims are being made against McNeil. Plaintiffs' constitutional claims should be dismissed, or, in the alternative, Plaintiffs should be required to provide a more definite statement as to the exact constitutional theories asserted against McNeil and upon which allegations they are based.

**B.      Plaintiffs cannot state a claim for age discrimination under the 14th Amendment.**

In Counts XXIII – XV, Plaintiffs Pooley, Jordan, and Stein have each attempted to assert an age discrimination claim against McNeil under the 14th Amendment. (Third Am. Cmpl. ¶¶ 321, 334, 347.) However, a claim for age discrimination cannot be brought under the guise of a § 1983 equal protection claim.

A substantial amount of appellate authority holds that age discrimination claims cannot be brought under § 1983. *Ahlmeyer v. Nevada System of Higher Educ.*, 555 F. 3d 1051, 1057 (9th Cir. 2009) ("the ADEA precludes the assertion of age discrimination in employment claims, even those seeking to vindicate constitutional rights, under § 1983"); *Tapia-Tapia v. Potter*, 322 F. 3d 742, 745 (1st Cir. 2003) ("The ADEA provides the exclusive federal remedy for age discrimination in employment."); *Lafleur v. Texas Dep't of Health*, 126 F. 3d 758, 760 (5th Cir. 1997) ("we are compelled to hold that where a plaintiff asserts a claim of age discrimination under § 1983 and where the facts alleged will not independently support a § 1983 claim, the plaintiff's age discrimination claim is preempted by the ADEA."); *Zombro v. Baltimore City Police Dep't*, 868 F. 2d 1364, 1369 (4th Cir. 1989) ("the conclusion is irresistible that the ADEA provides the exclusive judicial remedy for claims of age discrimination.").[7]

The Eleventh Circuit has yet to address this exact issue. Yet, in *Paterson v. Weinberger*, 644 F. 3d 521, 525 (5th Cir. 1981),[8] the court affirmed the dismissal of an equal protection claim based on age discrimination on the ground that "the ADEA amendment [extending the ADEA's

---

[7] The undersigned is only aware of one circuit that takes a contrary view. In *Levin v. Madigan*, 692 F. 3d 607, 621-22 (7th Cir. 2012), the court held that the ADEA is not the exclusive remedy for age discrimination claims. The Supreme Court granted certiorari to resolve this issue; however, they dismissed the petition as improvidently granted, thereby leaving the issue for another day. *Madigan v. Levin*, 133 S. Ct. 1600 (2013).

[8] In *Bonner v. City of Prichard*, 661 F. 2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Court adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981. *Paterson* was decided on May 8, 1981.

coverage to federal employees] was intended to provide an exclusive remedy for age discrimination." *Id.* at 525. The court noted that "by establishing the ADEA's comprehensive scheme for the resolution of employee complaints of age discrimination in federal employment, Congress clearly intended that all such claims of age discrimination be limited to the rights and procedures authorized by the Act . . . ." *Id. Paterson* specifically applied to federal employees, but its rationale is equally applicable in this context. Indeed, it has been utilized by district courts in this circuit to hold that § 1983 equal protection age discrimination claims are barred. *Ford v. City of Oakwood, Georgia*, 905 F. Supp. 1063 (N.D. Ga. 2005); *Collins v. Fulton Cnty. Sch. Dist.*, 2012 WL 7802745 (N.D. Ga. Dec. 26, 2012).

"[T]he comprehensive remedial scheme provided in the ADEA would be thwarted if Plaintiffs could bypass it merely by couching their claim of age discrimination as an equal protection claim under § 1983. *Collins*, 2012 WL 7802745, at *23. As such, Pooley, Jordan, and Stein cannot state an equal protection claim based on age discrimination.

### IV. The Third Amended Complaint exceeds the leave granted by the State court to allow Plaintiffs to further amend their complaint.

As reflected in the procedural history above, Plaintiffs' serial amendments to their complaint have required the Defendants to repeatedly file detailed motions pointing out the same deficiencies that render the complaint subject to dismissal. This, of course, has caused enormous burden and expense. Plaintiffs' leave to file the current operative complaint was premised, in part, upon agreement of counsel and representations to the court that certain causes of action would be removed from the amended complaint. Plaintiffs violated this agreement, thereby exceeding the leave of court allowing Plaintiffs to further amend their complaint.

The most recent amendment came as a result of Plaintiffs' Motion for Leave to file a Third Amended Complaint in the State Court Action. That motion was contested and was

addressed in the State Court Action in a hearing on November 17, 2015, and in another hearing on November 19, 2015. (Copies of the hearing transcripts from those proceedings are attached as Exhibits A and B, respectively.)

As reflected in the proposed amended complaint that was filed along with Plaintiffs' Motion for Leave to Amend, the Plaintiffs represented that, if allowed to further amend their complaint, Plaintiffs Daley and Pooley would be dismissing all of their claims against McNeil.[9] This agreement was confirmed by Plaintiffs' counsel on multiple occasions and was specifically represented to the court during the hearings on Plaintiffs' motion for leave to amend. (Hr'g Tr. Nov. 17, 2015, 8:22-9:3; 16:19-24; Hr'g Tr. Nov. 19, 2015, 20:1-15.) The court thereafter granted Plaintiffs leave to further amend their complaint. Yet, despite the prior agreement, Plaintiffs Daley and Pooley reasserted state law claims against McNeil. Thus, Daley's attempt to state a claim for assault against McNeil (Count V), and Pooley's attempt to state a claim for IIED against McNeil (Count VI), are in violation of their prior agreement and exceed the leave that was granted in the State Court Action. Those claims should therefore be dismissed with prejudice, or, in the alternative, stricken in their entirety.

## Conclusion

Plaintiffs have been trying, unsuccessfully, to bring claims against McNeil for more than a year. The current complaint, drafted with the benefit of extensive written discovery and 27 days of sworn testimony, contains the same critical shortcomings that existed in the initial complaint. For the reasons listed herein, McNeil moves this Court for an order dismissing Plaintiffs' Third Amended Complaint. Additionally, or in the alternative, McNeil requests a

---

[9] Undersigned counsel is not suggesting that Plaintiffs agreed to drop their constitutional claims that were then-pending in the federal court. However, the understanding and agreement between counsel was that if granted leave to further amend, Plaintiffs Pooley and Daley would drop their state law claims against McNeil.

more definite statement as to the § 1983 equal protection claims brought against him as well as an order striking Daley's and Pooley's claims in their entirety.

**I HEREBY CERTIFY** that on January 11, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to Bertha L. Burruezo, Esq., bertha@burruezolaw.com; Carlos J. Burruezo, Esq., carlos@burruezolaw.com; Vanessa A. Braga, Esq., vanessa@burruezolaw.com, 941 Lake Baldwin Lane, Suite 102, Orlando, FL 32814; Jeffrey S. Weiss, Esq., jweiss@orlandolaw.net; and Richard V. Blystone, Esq., rblystone@orlandolaw.net, P.O. Box 2873, Orlando, FL 32802-2873.

*/s/ Joshua B. Walker*
WILLIAM E. LAWTON, ESQ.
Florida Bar No. 0163236
JOSHUA B. WALKER, ESQ.
Florida Bar No. 0047614
ERIC J. NETCHER, ESQ.
Florida Bar No. 106530
Dean, Ringers, Morgan & Lawton, P.A.
Post Office Box 2928
Orlando, Florida 32802-2928
Tel: 407-422-4310    Fax: 407-648-0233
WLawton@drml-law.com
JWalker@drml-law.com
ENetcher@drml-law.com
Attorneys for Defendant William McNeil