UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KATRINE ZORN, ERIN DALEY,
WALTER POOLEY, KAREN GILBERT,
JERRY JORDAN, MARK STEIN and
ROSELYN MARTINEZ-ECK,

     Plaintiffs,

v.                                       Case No:   6:16-cv-1-Orl-41TBS

WILLIAM MCNEIL and CITY OF
CASSELBERRY,

     Defendants.
_____

## ORDER

This case comes before the Court without oral argument on the following papers:

- Defendants' Joint Motion for Leave to Take More than the Allotted Number of Depositions (Doc. 50);

- Plaintiffs' Response in Opposition to Defendants' Joint Motion for Leave to Take More than the Allotted Number of Depositions (Doc. 53); and

- Defendant William McNeil's Reply Brief in Support of Joint Motion for Leave to Take More than the Allotted Number of Depositions (Doc. 58).

Defendant William McNeil is the former Chief-of-Police for the City of Casselberry, Florida (Doc. 3, ¶ 18). Plaintiffs are current and former employees of the Casselberry Police Department (Id., ¶ 3). In their 25 count complaint, Plaintiffs allege that while McNeil was the chief, he discriminated and retaliated against them, invaded their privacy, intentionally and negligently caused them to suffer emotional distress, and otherwise violated their rights (Id., ¶ 2). Plaintiffs' combined damage claims exceed $7.8 million (Doc. 44-4).

After the City learned of Plaintiffs' claims, the Seminole County Sheriff's Office ("SCSO") made a formal administrative investigation into the allegations (Doc. 53 at 4). During the investigation, the SCSO conducted recorded interviews with 64 people (Doc. 53-5 at 2-4). Those individuals included every police department employee and some former employees (Doc. 53 at 4-5). The parties obtained these interviews through public records requests (Id., at 5).

In 2014, Plaintiffs filed this lawsuit in Florida state court (Doc. 1). While the case was pending in state court Plaintiffs deposed McNeil and six other witnesses, and Defendants deposed six Plaintiffs and a counselor who saw several Plaintiffs (Doc. 50 at 2). The parties agreed on 24 deposition dates and had begun to coordinate more depositions (Id.). At a state court hearing, Plaintiff's counsel told the judge "[w]e still have 40 witnesses to depose. We met the other day and talked about deposing an additional 40 witnesses. This is a big case." (Doc. 50 at 5). In December 2015, Plaintiffs amended their complaint, adding for the first time, federal causes of action (Doc. 3 at 53). Within thirty days of the amendment, Defendants removed the case to this Court (Doc. 1).

In their FED. R. CIV. P. 26(a)(1) disclosures, Plaintiffs list 31 witnesses and incorporate by reference all witnesses listed by Defendants (Doc. 50 at 4). In their rule 26(a)(1) disclosures, McNeil lists 81 witnesses and the City lists 41 (Doc. 50 at 4). The parties' case management report informed the Court that Plaintiffs were proposing twenty depositions per side for a total of forty, and the City was proposing twenty depositions for Plaintiffs and twenty for each Defendant for a total of sixty (Doc. 32 at 7).[1] After receiving

---

[1] McNeil's position, if any, is not stated in the report.

the report, the Court entered its Case Management and Scheduling Order ("CMSO") which limits the parties to ten depositions per side (Doc. 33 at 3).

No depositions have been taken since the case was removed to this Court (Doc. 50 at 5). Now, Defendants say the six Plaintiffs who have been deposed must be deposed again, apparently because their depositions were taken before Plaintiffs added the federal claims to their complaint (Id.). Plaintiffs also intend to re-depose several of the City's representatives (Id., at 3).

Defendants argue that they should be permitted to take up to forty depositions, and that Plaintiffs should be allowed up to twenty because this is a complex case as evidenced by the number of counts in the complaint and the number of people the SCSO interviewed as part of its investigation (Id., at 1-2). Defendants also allege that the conduct at issue "spans the course of decades," and they note that Plaintiffs' combined damage claims exceed $7 million (Id., at 4-5).

Federal Rule of Civil Procedure 30(a)(2) provides that a party may not take more than ten depositions absent consent of the other parties or leave of court. At least two objectives underpin this requirement. The first is "to assure judicial review under the standards stated in Rule 26(b)(2) before any side will be allowed to take more than ten depositions in a case without agreement of the other parties." Advisory Committee Note to the 1993 Amendment. The second is "to emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case." Id. Defendants were aware of Rule 30(a)(2) before they removed the case from state court to this Court. In making this decision, Defendants assumed the risk that they might be allowed fewer depositions than they believe they need.

Motions to exceed the limit of ten depositions per side are rare, presumably

because most attorneys resolve these matters cooperatively. As a consequence, there is not a large body of case law on the subject. One published decision, with which the Court agrees, observes that "[b]ecause of the fact-intensive nature of decisions on the issue of the number of depositions and the ability to take another deposition of a deponent, decisions from other courts are typically not persuasive." <u>Procaps S.A. v. Patheson Inc.</u>, No. 12-24356-CIV, 2015 WL 2090401, at *4 (S.D. Fla. May 5, 2015).

Defendants' motion relies heavily on this Court's decision in <u>United States v. Gachette</u>, No. 6:14-cv-1539-Orl-22TBS, 2015 WL 524369 (M.D. Fla. Feb. 9, 2015). Defendants' reliance on <u>Gachette</u> is misplaced because the facts are so dissimilar from this case. In <u>Gachette</u> the government alleged that the defendant and others acting in concert with him and at his direction, was behind multiple limited liability companies that operated as tax preparation businesses. Over a multi-year period Gachette allegedly promoted and encouraged the employees of the tax preparation businesses to prepare tens of thousands of false and fraudulent federal income tax returns. The government accepted those returns and paid millions of dollars in undeserved refunds to customers of the tax preparation businesses. The scheme involved at least 56 tax preparation stores operating throughout the Southeastern United States. Before the government filed the lawsuit, the Internal Revenue Service interviewed 94 customers who had their tax returns prepared at Gachette-owned tax return preparation stores in the Orlando metropolitan area. After suit was filed, the government sought leave to take up to 100 fact depositions to provide testimony from witnesses whose returns were prepared in different geographic areas, during different years, and which involved different types of fraud. The government also sought to depose Gachette's employees and other persons associated with the tax preparation businesses who were not located in this district and who were expected to be

hostile witnesses. <u>Gachette</u> was one of five related cases. In the other four, the government made similar motions that were granted without objection, which suggested that counsel in those other cases recognized the need for the additional depositions.

Here, Plaintiffs admit their claims result from individualized facts but argue that all events occurred within the same small town police department that has approximately sixty employees (Doc. 53 at 1-2). This argument does not address the number of employees who may possess information that is relevant and material to the claims and defenses that have been asserted.

Plaintiffs' current attempt to limit the parties to ten depositions per side is also not consistent with their statement to the state court judge concerning the number of depositions to be taken, the number of days the parties had reserved for depositions in the state court case, or Plaintiffs' recommendation to this Court that each side be allotted twenty depositions. Still, parties are allowed to change their minds.

Plaintiffs argue that the issue of the number of depositions the parties are allowed was presented to and decided by the Court when it issued the CMSO (<u>Id.</u>, at 3). The Court disagrees. Unlike the current motion papers, the parties' report did not articulate the facts and law supporting their positions, and the Court knows considerably more about the case now than when it entered the CMSO.

Plaintiffs argue that sixty witnesses work for the City or SCSO and are therefore, uniquely within the control of Defendants (<u>Id.</u>, 3-4). The extent of Defendants' control over these people is an assumption. It is unlikely that in his capacity as the former chief-of-police, McNeil has any control over these people. Presumably, the City has some amount of influence over its employees but the extent of that influence, or whether it would be wise to exert it in this situation, is unknown. The Court sees no reason why either

Defendant would have any influence over the SCSO inasmuch as Florida sheriffs are independent, constitutional officers who answer to the voters.

This case is unusual in that the parties have the benefit of the witness interviews conducted by the SCSO (Id., at 4-5). What the Court doesn't know is the depth of the interviews, or whether they covered all of the issues raised in this case. Depending upon the answers to these questions, the recorded interviews may be a source of information "that is more convenient, less burdensome, or less expensive" than deposing additional witnesses. FED. R. CIV. P. 26(b)(2)(C).

Plaintiffs argue that Defendants' motion is premature. Several of the cases on this subject hold that "[m]otions for leave to take additional depositions filed before a party has exhausted its presumptive ten depositions have been found to be premature by courts in this District." F.D.I.C. v. Nason Yeager Gerson White & Lioce, P.A., Case No. 2:13-cv-208-FtM-38CM, 2014 WL 1047245 at *2 (M.D.Fla. Mar. 17, 2014); Bituminous Fire and Marine Ins. Corp. v. Dawson Land Dev. Co., * (M.D. Fla. Feb. 13, 2003). In Cutugno v. Second Chance Jai Alai LLC, No. 5:11-cv-113-Oc-34PRL, 2012 U.S. Dist. LEXIS 144557, at *3 (M.D. Fla. Oct. 5, 2012) the Court explained:

> At best, Plaintiff's request is premature as Plaintiffs filed their motion after only taking four depositions. Under these circumstances, the Court is unable to evaluate whether the number of needed depositions would necessarily exceed ten, whether the benefit of additional depositions would outweigh the burden or expense, and whether the desired depositions would be cumulative or duplicative.

To date, neither side has taken ten depositions.

A number of courts have required a party seeking leave to take more than ten depositions to justify the necessity of the depositions already taken. F.D.I.C. v. Nason Yeager Gerson White & Lioce, P.A., 2014 WL 1047245 at *2; AIG Centennial Ins. Co. v.

O'Neill, Case No. 09-60551, 2011 WL 4116555 at *16 (S.D.Fla. Oct. 18, 2010); Royal v. Bahamian Ass'n, Inc. v. QBE Ins. Corp., Case No. 10-21511-CIV, 2010 WL 3003914 at *2 (S.D.Fla., July 29, 2010); Barrow v. Greenville Indep. Sch. Dist., 202 F.R.D. 480, 482 (N.D.Tex. 2001). In this case, no explanation is required to satisfy the Court that Defendants were warranted in deposing Plaintiffs. Because Plaintiffs are seeking compensatory damages for emotional and mental stress and mental health counseling the Court is also satisfied that Defendants had good reason to depose a counselor who saw multiple Plaintiffs (Doc. 44 at 2).

Published decisions generally hold that a party seeking to take additional depositions "must make a particularized showing of why the discovery is necessary." Archer Daniels Midland Co. v. Aon Risk Services, Inc., 187 F.R.D. 578, 586 (D. Minn. 1999); F.D.I.C. v. Nason Yeager Gerson White & Lioce, P.A., 2014 WL 1047245 at *2; Bituminous Fire and Marine Ins. Corp. v. Dawson Land Dev. Co., 2003 WL 22012201, at * 1; Royal v. Bahamian Ass'n, Inc. v. QBE Ins. Corp., 2010 WL 3003914 at *2. Defendants have not identified the additional witnesses they want to depose, let alone explain the importance of their anticipated testimony.

After considering all of these factors, the Court concludes that the parties likely do require more than ten depositions per side to adequately prepare this case for trial. But, Defendants have failed to supply the Court with the information necessary to make an informed, reasoned decision. Therefore, the motion is **DENIED without prejudice**. If the parties are unable to resolve this matter between themselves and Defendants elect to file a new motion it should include a list of the additional witnesses to be deposed, an explanation of why each additional deposition is necessary, and an explanation of why the SCSO interview of each witness is not sufficient.

**DONE** and **ORDERED** in Orlando, Florida on July 26, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record