UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KATRINE ZORN, ERIN DALEY,**
**WALTER POOLEY, KAREN**
**GILBERT, JERRY JORDAN, MARK**
**STEIN and ROSELYN MARTINEZ-**
**ECK,**

          **Plaintiffs,**

**v.**                                         **Case No:  6:16-cv-1-Orl-41TBS**

**WILLIAM MCNEIL and CITY OF**
**CASSELBERRY,**

          **Defendants.**
_____/

## ORDER

THIS CAUSE is before the Court on Defendant William McNeil's Motion to Dismiss

and/or Motion for More Definite Statement (Doc. 9) and Defendant City of Casselberry's Motion

to Dismiss (Doc. 10). As set forth below, the Motions will be granted in part and denied in part.

### I.   BACKGROUND

Plaintiffs all worked for Defendant City of Casselberry's ("the City") police department

where Defendant William McNeil was Chief of Police. (Third Am. Compl. ("TAC"), Doc. 3, ¶¶

7–18). All of Plaintiffs' claims arise out of their employment and personal interactions with

McNeil. In general, Plaintiffs allege that McNeil engaged in a campaign of harassment,

discrimination, and bullying and that efforts to discourage or stop McNeil were met with

retaliation.

Plaintiffs Katrine Zorn, Erin Daley, and Karen Gilbert all allege that they were subject to

sexual harassment and sex discrimination. Zorn alleges that McNeil coerced her into a short, non-

physical relationship where they sent one another sexually explicit pictures and videos via text message. (*Id.* ¶¶ 21–23). In spring 2013, Zorn stopped sending pictures and videos of herself and repeatedly and unequivocally told McNeil to stop sending her such things. (*Id.* ¶¶ 24–26). McNeil ignored Zorn's request and "continued to . . . send[] her hundreds of text messages with pictures of his penis, and approximately [fifty] videos of him masturbating." (*Id.* ¶ 26). Further, when Zorn ignored McNeil's text messages or did not respond quickly enough, McNeil "would call [Zorn] and have her listen as he 'finished' on the phone." (*Id.* ¶ 27). Apparently in response to Zorn's rejection, McNeil's behavior escalated, "and he began to watch her every move by accessing the City's [GPS tracking system] to find out when she was working or on a call." (*Id.* ¶ 28).

Daley alleges that she was told by male police officers that she was hired because she was a pretty woman. (*Id.* ¶ 50). She was also warned about McNeil and advised not to respond to text messages from him. (*Id.*). Nevertheless, Daley alleges that she was still subjected to sexually aggressive behavior by McNeil, including "feeler" text messages and comments about her looks in front of other employees. (*Id.* ¶¶ 51–53). In addition, once McNeil discovered that Daley was dating another police officer, McNeil issued a standing order that Daley was not permitted to work on the same shift as the officer that she was dating and made it difficult for them to take time off together. (*Id.* ¶¶ 55–57).

Gilbert alleges a similar pattern of harassment, including McNeil "liking" Gilbert's profile on Match.com, making comments about how good she smelled, leaving Gilbert voicemails on her work phone after hours stating that he could not sleep and wanted to hear her soothing voice, and writing her poems. (*Id.* ¶ 66). Gilbert also alleges that McNeil sent her text messages outside of work inquiring as to what she was doing and asking her out. (*Id.*).

Although Plaintiff Roselyn Martinez-Eck does not allege that she was sexually harassed by McNeil, she does allege that she was discriminated against because she is female, as well as because she is Hispanic. Generally, Martinez-Eck alleges that she was treated differently than the white, male officers, (*id.* ¶¶ 128, 132), and that she was subjected to degrading statements and racial epithets, (*id.* ¶ 133).

Plaintiffs Walter Pooley, Jerry Jordan, and Mark Stein each allege that they were discriminated against on the basis of some combination of their age, national origin, and gender. These allegations include discriminatory comments about Hispanics, (*id.* ¶ 79), questions about when Jordan and Stein would retire, (*id.* ¶¶ 95, 118(b)), and "constant bullying," (*id.* ¶¶ 78, 94, 114). For example, Pooley alleges that McNeil made derogatory statements such as "[t]elling Pooley that he needed to learn the language if he was going to stay in America" and that McNeil assigned Pooley demeaning jobs, screamed at Pooley, and wrote Pooley up for things that non-Hispanic officers would not get in trouble for doing. (*Id.* ¶ 81).

Jordan alleges that McNeil allowed other employees to make derogatory comments such as stating that "Jordan was the reason that people over [sixty] should just die." (*Id.* ¶ 95). Jordan also alleges that McNeil "constantly ridiculed Jordan in front of other employees and humiliated him by posing stuffed animals in sexual positions in his office." (*Id.* ¶ 97). Similarly, Stein alleges that McNeil "plac[ed] stuffed animals in a sexual position" on his desk as well as took Stein's keys from his office and hung them on a toilet handle; removed Stein's office chair; taped toilet seat covers to Stein's desk chair, computer monitor, and calendar; unplugged Stein's phone; and defaced Stein's calendar and computer monitor. (*Id.* ¶ 118).

In addition, all Plaintiffs except Gilbert[1] allege that they were retaliated against. Zorn, Pooley, Jordan, and Stein all allege that they were retaliated against for participating in an administrative investigation conducted by the Seminole County Sheriff's Office, (*id.* ¶¶ 41, 90, 103, 123), and for filing Charges of discrimination, (*id.* ¶¶ 40, 88, 102, 124), and Zorn, Pooley, and Jordan allege that they were retaliated against for filing this lawsuit, (*id.* ¶¶ 42–45, 87, 89, 91, 108). (*See also id.* ¶¶ 45–47, 106–107, 110–112, 126). Pooley and Stein also allege that they were retaliated against for making internal complaints. (*Id.* ¶¶ 84, 86, 114–115, 117, 122). Daley alleges that she was retaliated against for complaining of McNeil's behavior to her supervisor and rejecting McNeil's sexual advances. (*Id.* ¶¶ 58–60). Finally, Martinez-Eck alleges that she was retaliated against for discussing allegations of race discrimination with a news reporter. (*Id.* ¶¶ 129–131).

Based on these allegations, Plaintiffs filed suit in state court, alleging only state law claims, (Original Compl., Doc. 10-1; First Am. Compl., Doc. 10-2; Second Am. Compl. ("SAC"), Doc. 10-3), and filed Charges of discrimination with the Equal Opportunity Employment Commission ("EEOC"). (Doc. 3 ¶ 4). After receiving their right to sue letters, (*id.* ¶ 6), Plaintiffs filed a separate lawsuit in federal court. (Fed. Ct. Compl., Doc. 10-5). After obtaining leave to amend in state court, Plaintiffs dismissed the federal case and amended their complaint in state court to include

---

[1] Gilbert originally filed retaliation claims, but she subsequently filed a Notice of Voluntary Dismissal (Doc. 60) of those Counts. Although Gilbert attempts to dismiss her claims via Federal Rule of Civil Procedure 41(a)(1)(A)(i), which is not permitted, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1106 (11th Cir. 2004) ("Rule 41 allows a plaintiff to dismiss all of his claims against a particular defendant; its text does not permit plaintiffs to pick and choose, dismissing only particular claims within an action."), the Court will construe the Notice as a Motion to Amend pursuant to Rule 15, which will be granted. *See id.* ("A plaintiff wishing to eliminate particular claims or issues from the action should amend the complaint under Rule 15(a) rather than dismiss under Rule 41(a)" (quotation omitted)); *see also* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading . . . with . . . the court's leave. The court should freely give leave when justice so requires.").

their federal causes of action. (*See generally* Doc. Nos. 3, 10-5). Defendants then removed the case

to this Court. (Notice of Removal, Doc. 1). McNeil and the City have now moved to dismiss

Plaintiffs' various claims set forth in the TAC.

## II.      MOTION TO DISMISS STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of

the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to

Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure

to state a claim upon which relief can be granted." In determining whether to dismiss under Rule

12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a

light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260,

1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Generally, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four

corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## III.      LEAVE TO AMEND

As a preliminary matter, both the City and McNeil argue that Plaintiffs exceeded the leave

to amend granted by the state court. The City cites the proposed third amended complaint, which

was attached to Plaintiffs' state-court motion to amend, (Doc. 10-8 at 5–38), and argues that the

TAC differs greatly from what was originally proposed. The City also cites generally, without any

pinpoint citation, to a thirty-three page transcript of a hearing held in the state court on the motion

to amend. (Doc. 10-15). A review of the hearing transcript, however, indicates that the City's

argument is somewhat disingenuous.

Specifically, the City implies that Plaintiffs were required to use the proposed third

amended complaint and that Plaintiffs did not have leave to include their federal causes of action

in the TAC. However, the following portion of the hearing transcript indicates otherwise.

> THE COURT: . . . I will grant your motion and allow you to amend
> your complaint. I don't know if you're intending to rely upon the
> one that was attached to your motion filed on October 7 because we
> can go ahead—I can give you a couple days to just go ahead and file
> that if that's what you're going to do. However, if there's—because
> of anything that you have learned either through discovery or
> through the arguments of counsel here today that you need to make
> further amendment, I can give you more time to do that.
>
> MR. BURRUEZO: We would like ten days from today to file an
> amended complaint. . . . We've had some discussion in the hallway
> about possibly including in this lawsuit the stuff that's pending in
> federal court, in which case this complaint will be significantly
> larger. That's yet to be determined and decided amongst the lawyers,
> but we've had that discussion.
>
> THE COURT: Okay.
>
> MR. BURRUEZO: These ten days will give us some time to figure
> that out.
>
> THE COURT: Okay. All Right. So ten days to file your amended
> complaint.

(Doc. 10-15 at 31:14–32:18). Accordingly, it appears that Plaintiffs had at least implicit permission

from the state court to include their federal causes of action in the TAC.

McNeil argues that Daley's claim for assault and Pooley's claim for intentional infliction of emotional distress ("IIED") exceed the leave granted by the state court. Because those claims will be dismissed on their merits, the Court declines to address this argument.

### IV.   THE CITY'S MOTION TO DISMISS

#### A.   Timeliness of Plaintiffs' FCRA, Title VII, and ADEA Claims

The City argues that Plaintiffs' Florida Civil Rights Act ("FCRA"), Title VII, and Age Discrimination in Employment Act ("ADEA") claims are untimely. The FCRA, Title VII, and the ADEA require plaintiffs to exhaust administrative remedies by filing a Charge with the appropriate administrative agency prior to filing suit. 29 U.S.C. § 626(d)(1); 42 U.S.C. § 2000e-5; Fla. Stat. § 760.11(1); *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). Thereafter, "Title VII and ADEA actions" must be brought within ninety days "after a complainant has adequate notice that the EEOC has dismissed the Charge." *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000); *see also* 42 U.S.C. § 2000e-5(f)(1). The City argues that this ninety-day deadline applied to Plaintiff's FCRA claims as well because those claims were investigated by the EEOC. The City further argues that Plaintiffs failed to comply with the ninety-day deadline. Specifically, Plaintiffs filed the SAC on March 24, 2015, which did not include claims under the FCRA, Title VII, or the ADEA. (Doc. 10-3 at 1, 17–22). Plaintiffs' right to sue letters were issued on March 27, 2015, and April 3, 2015, (Right to Sue Letters, Doc. 10-12, at 1, 3, 7, 9, 11, 13), and were received by Plaintiffs on April 3 and 10, 2015, (Pls.' Resp. to City's Mot. Dismiss, Doc. 30, at 2). Plaintiffs filed the TAC on December 3, 2015, alleging for the first time in this lawsuit violations of the FCRA, Title VII, and the ADEA. Because the TAC was filed more than ninety days after Plaintiffs received their right to sue letters, the City argues that those claims are time-

barred. Plaintiffs argue, *inter alia*, that the FCRA, Title VII, and ADEA claims relate back to the SAC.[2]

The TAC was filed prior to the removal of this case to federal court. Accordingly, the Court must apply the Florida Rules of Civil Procedure to determine whether the claims in the TAC relate back to the filing of the SAC. *See* Fed. R. Civ. P. 1 ("The[] [Federal Rules of Civil Procedure] govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81."); Fed. R. Civ. P. 81(c)(1) ("The[] [Federal Rules of Civil Procedure] apply to a civil action *after* it is removed from a state court." (emphasis added)); *see also Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946–47 (5th Cir. 2014) (holding state relation back statute applied where relevant pleadings were filed in state court prior to removal and collecting cases); *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 682 (9th Cir. 1980) (same). Nevertheless, Florida Rule of Civil Procedure 1.190(c) is nearly identical to Federal Rule of Civil Procedure 15(c)(1)(B), and Florida Courts have relied on federal cases construing the federal counterpart. *Fabbiano v. Demings*, 91 So. 3d 893, 895–86 (Fla. 5th DCA 2012) ("Because we adopted the federal rule almost verbatim, we may rely on the federal cases construing the federal counterpart to our rule."); *see also Roden v. R.J. Reynolds Tobacco Co.*, 145 So. 3d 183, 189 (Fla. 4th DCA 2014) (relying on federal case law); *but see Okeelanta Corp. v. Bygrave*, 660 So. 2d 743, 751 (Fla. 4th DCA 1995) ("Federal Rule of Civil Procedure 15 . . . is more restrictive than . . . Florida Rule of Civil Procedure 1.190(c).").

Florida Rule of Civil Procedure 1.190(c) provides: "When the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to

---

[2] Plaintiffs also argue that the FCRA claims are not subject to the ninety-day deadline. Because the Court determines that the FCRA claims relate back to the SAC, it need not determine this issue.

be set forth in the original pleading, the amendment shall relate back to the date of the original pleading." Under this rule, "[w]hen the original complaint gives fair notice of the factual underpinning for the claim, an amendment to state a new legal theory should relate back." *Fabbiano*, 91 So. 3d at 895; *see also Mayle v. Felix*, 545 U.S. 644, 664 (2005) ("So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order."). Defendant asserts that Plaintiffs' FCRA, Title VII, and ADEA retaliation and discrimination claims do not relate back to the SAC and are, therefore, time barred.[3]

  1.  *Retaliation*

The City argues that the FCRA, Title VII, and ADEA retaliation claims do not relate back to the SAC because none of the facts contained in the SAC put the City on notice of a potential retaliation claim. The City does not make any specific arguments with regard to the facts alleged in the TAC versus the SAC, but rather, summarily states that "[r]etaliation is not referenced or even suggested whatsoever in Plaintiffs' [SAC]." (Doc. 10 at 12). This assertion is inaccurate.

To state a claim for retaliation under the FCRA, Title VII, or the ADEA, a plaintiff must allege: "that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (ADEA and Title VII); *Giles v. Daytona State Coll., Inc.*, 542 F. App'x 869, 873 (11th Cir. 2013) (FCRA). After comparing the allegations in the SAC versus the TAC, it is apparent that Plaintiffs asserted the factual bases for their retaliation claims in the SAC, and the additional relevant allegations are based on incidents that occurred after the filing of the SAC. Thus, the City was on notice of the factual underpinnings

---

[3] Defendants do not dispute the fact that Plaintiffs' Title VII sexual harassment claims relate back to the SAC.

for the retaliation claims and the allegations of additional, ongoing retaliation are properly asserted. *See Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889, 892 (11th Cir. 2014) ("It is unnecessary for a plaintiff to exhaust administrative remedies prior to filing a judicial claim of retaliation if that claim grew 'out of an earlier charge,' because . . . 'the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.'" (quoting *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988))).

In the SAC, Zorn alleged the factual basis for her retaliation claim—that she told McNeil to stop sexually harassing her and that, afterwards, McNeil intensified his harassment and put Zorn on the night shift. (Doc. 10-3 ¶¶ 19, 21, 28, 33). These same allegations form the factual basis for Zorn's retaliation claim in the TAC. (Doc. 3 ¶¶ 24, 26, 33, 38). Zorn's additional allegations of retaliation occurred after the SAC was filed. Thus, Zorn's retaliation claim relates back to the SAC and the inclusion of allegations that occurred after the filing of the SAC was proper.

Similarly, Pooley asserts in the SAC that he complained to his supervisor of McNeil's behavior and that, afterwards, he was continuously harassed, (Doc. 10-3 ¶ 55). Jordan alleges that he complained about the harassment and opposed the harassment of other employees and that Jordan was retaliated against for doing so. (*Id.* ¶ 73). Thus, the factual basis for retaliation was pleaded in the SAC and, as with Zorn, the additional factual allegations occurred subsequent to the filing of the SAC. (Doc. 3 ¶¶ 87–92, 101–103, 109–111).[4]

---

[4] The SAC was filed on March 24, 2015. The additional retaliation alleged by Pooley is alleged to have occurred "[i]n March 2015." Without a specific date as to when the additional retaliation allegedly occurred, the Court construes the allegations in favor of Plaintiff and assumes that it occurred after March 24, 2015.

With regard to Daley and Stein,[5] the TAC includes factual allegations to support a claim of retaliation that are nearly identical to those asserted in the SAC.[6] (*Compare* Doc. 10-3 ¶¶ 44–47, *with* Doc. 3 ¶¶ 57–60 (Daley); *compare* Doc. 10-3 ¶¶ 82, 84–86, *with* Doc. 3 ¶¶ 114, 117–118). Thus, the retaliation claims asserted by Daley and Stein clearly relate back to the SAC.

### 2.  Discrimination

The City next argues that Plaintiffs' discrimination claims cannot relate back to the SAC because those claims had not accrued at the time the SAC was filed. The City conflates the accrual of the causes of action—age, sex, and race discrimination—with the satisfaction of administrative prerequisites. Plaintiffs' causes of action accrued at the time that the last element constituting the cause of action occurred, not when the EEOC issued its right to sue letters. While Defendant is correct that exhausting administrative remedies is a condition precedent to filing suit under the FCRA and Title VII, merely failing to obtain a right to sue letter, while complying with all other aspects of the administrative prerequisites, can be cured after the action has commenced. *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1569–70 (11th Cir. 1996) ("[R]eceipt of a right-to-sue letter is not a jurisdictional prerequisite to suit, but rather, is a statutory precondition which is subject to equitable modification."); *Jones v. Am. State Bank*, 857 F.2d 494, 499–500 (8th Cir. 1988) ("[R]eceipt of a right-to-sue notice is a condition precedent to a filing of a Title VII claim, curable after the action has commenced."). Additionally, obtaining a right to sue letter is not a prerequisite under the ADEA. 29 U.S.C. § 626(d)(1); *Grayson v. K Mart Corp.*, 79 F.3d

---

[5] As noted previously, Gilbert is no longer pursuing her retaliation claims, and therefore, the relation back arguments with regard to those claims are moot.

[6] Stein, like Zorn, Pooley, and Jordan, also asserts retaliation subsequent to the filing of the SAC for his participation in this lawsuit and the administrative investigation into McNeil, and for the same reasons, those allegations relate back.

1086, 1100 (11th Cir. 1996) ("Unlike Title VII, the ADEA does not require that the plaintiff first receive a right to sue notice from the EEOC prior to commencing suit.").

Further, the City's reliance on *Makro Capital of America, Inc. v. UBS AG*, 543 F.3d 1254 (11th Cir. 2008) is misplaced; that case involved a different subsection of Rule 15—(c)(1)(C), as opposed to (c)(1)(B)—and a different statute—the Federal False Claims Act—which has unique pre-suit requirements not at issue here. Accordingly, the City has failed to establish that simply because Plaintiffs had not obtained right to sue letters at the time the SAC was filed, the claims in the TAC cannot relate back.

Moreover, contrary to the City's argument, the discrimination claims alleged in the TAC stem from the same factual allegations asserted in the SAC. Indeed, the City does not make any arguments with regard to specific facts underpinning the discrimination claims that are absent from the SAC. Instead, the City asserts that, in the SAC, "Plaintiffs hardly make reference to the City at all" and "spend almost the entirety of [the SAC] bashing McNeil." (Doc. 10 at 15). This argument ignores the fact that it is the actions of McNeil, as a representative of the City, that form the primary basis of Plaintiffs' discrimination claims.

Finally, the City points out that the position taken by Plaintiffs here—that the discrimination claims stem from the same conduct, transaction, or occurrence as the claims asserted in the SAC—is opposite of the position taken by Plaintiffs in opposing the motion to dismiss in the federal litigation. The City does not make any legal argument associated with this statement, nor does the City explain the significance of this fact. Perhaps this is because the City also reversed its position—arguing in the federal litigation that the discrimination claims did stem from the same conduct, transaction, or occurrence as the state court claims. Regardless, the mere

fact that the parties make different legal arguments here than they did in a different case involving a different analysis is irrelevant to whether Plaintiffs' discrimination claims relate back to the SAC.

As set forth above, the Court concludes that Plaintiffs' FCRA, Title VII, and ADEA claims relate back to the SAC and, therefore, are deemed timely filed.

### B.    Public Sector Whistleblower Act Claims

The City argues that Plaintiff's Florida Public Sector Whistle-blower Act ("PWA") claims must be dismissed for several reasons: first, that Plaintiffs fail to state a claim; second, that the claims are untimely; and third, that Plaintiffs failed to exhaust administrative remedies. In the alternative, the City argues that compensatory damages are not available under the PWA and Plaintiff's demand for such damages must be stricken.

### 1.    Failure to State a Claim

To state a claim for retaliation under the PWA, Plaintiffs must allege that "(1) [they] engaged in statutorily protected expression; (2) [they] suffered an adverse employment action; and (3) there is some causal connection between the two events." *Rustowicz v. N. Broward Hosp. Dist.*, 174 So. 3d 414, 419 (Fla. 4th DCA 2015). The City asserts that Plaintiffs did not engage in protected expression. Specifically, the City argues that the type of information disclosed by Plaintiffs was not covered by the PWA and that Plaintiffs did not disclose the information in a manner protected by the PWA.

The PWA protects employees from retaliation when they disclose certain information in a manner provided by the statue. To be protected, the information disclosed must include one of the following:

> (a) Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a

> substantial and specific danger to the public's health, safety, or welfare.
>
> (b) Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.

Fla. Stat. § 112.3187(5).

Plaintiffs allege that their disclosures included information relating to McNeil's unlawful race, age, and sex based discrimination and harassment. According to Plaintiffs, this discrimination and harassment was both a violation of federal and state law which presented a substantial and specific danger to the public's health, safety, or welfare, and it implicates gross malfeasance and gross neglect of duty. The Court agrees that, at the very least, Plaintiffs' allegations would "create reasonable inferences of gross mismanagement, malfeasance, or misfeasance." *Burden v. City of Opa Locka*, No. 11–22018–CIV, 2012 WL 4764592, at * 10 (S.D. Fla. Oct. 7, 2012); *Rosa v. Dep't of Children & Families*, 915 So. 2d 210, 211–12 (Fla. 1st DCA 2005) ("In considering the definition of misfeasance in this section, we must use a liberal construction." (citing *Irven v. Dep't of Health & Rehab. Servs.*, 790 So. 2d 403, 405 (Fla. 2001))). Moreover, as alleged, at least some of the actions of McNeil were unlawful and, taking all inferences in favor of Plaintiffs, the allegations could support a determination that those actions presented a substantial and specific danger to the public's safety and welfare. *See, e.g.*, *King v. Florida*, 650 F. Supp. 2d 1157, 1164 (N.D. Fla. 2009) (holding that complaints of "a supervisor's alleged bias in the hiring process" satisfied the PWA requirements because it was "something which could certainly amount to a danger to the public's health, safety, or welfare given that the problems related directly to the hiring of law enforcement officers." (quotation omitted)); *Hutchison v. Prudential Ins. Co. of Am., Inc.*, 645 So. 2d 1047, 1049 n.4 (Fla. 3d DCA 1994) (rejecting an argument that the PWA requires a threat to "the health, safety, or welfare of the public at large," as opposed to some lesser

component of the public, and reasoning "[i]f the statute were given that interpretation, it would defeat the remedial purpose since there would be few, if any, situations to which the statute would apply").

The City also argues that Plaintiffs did not disclose information in the manner required under the PWA. The PWA protects employees who, among other things, "disclose information on their own initiative in a written and signed complaint." Fla. Stat. § 112.3187(7). Because the City is a local governmental entity, disclosure under this provision must be made "to a chief executive officer as defined in [section 447.203(9), Florida Statutes,] or other appropriate local official." *Id.* § 112.3187(6). The PWA also protects employees "who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity." *Id.* § 112.3187(7).

The parties both focus on the first provision and disagree regarding whether Plaintiffs sufficiently alleged that they disclosed information to an appropriate official. However, there are no allegations of "written and signed" complaints to local officials in the TAC.[7] Thus, Plaintiffs have failed to allege that they fall within the category of individuals protected by the PWA for disclosing information on their own initiative. Nevertheless, all of the relevant Plaintiffs[8] except Martinez-Eck allege that they were interviewed and gave testimony in an administrative investigation of McNeil conducted by the Seminole County Sheriff's Office. (Doc. 3 ¶¶ 41 (Zorn), 90 (Pooley), 103 (Jordan), 123 (Stein)). Thus, Zorn, Pooley, Jordan, and Stein sufficiently allege

---

[7] The only written and signed complaints alleged are EEOC Charges and the Complaint in this lawsuit. Neither suffice under the PWA because they were not made to local officials. *Quintini v. Panama City Hous. Auth.*, 102 So. 3d 688, 688 (Fla. 1st DCA 2012).

[8] Plaintiffs concede that any PWA claim Daley may have had is untimely, (Doc. 30 at 20), and Gilbert has moved to voluntarily dismiss her PWA claim, (Doc. 60 at 1).

that they engaged in protected activity under the PWA. Martinez-Eck fails to allege any protected activity under the PWA and, therefore, her PWA claim will be dismissed without prejudice.

2.    *Timeliness*

The City argues that Plaintiffs' PWA claims are untimely. Plaintiffs concede that the PWA claims were not filed within the 180-day timeframe required, but Plaintiffs assert that, as to Zorn, Pooley, Jordan, and Stein, the PWA claims relate back to the previously-filed Complaints. As discussed previously, the allegations of retaliation were sufficiently provided in the SAC. However, none of the Complaints filed in this case prior to the TAC contain any allegations that any of the Plaintiffs participated in the administrative investigation of McNeil. As set forth above, Plaintiffs have failed to allege that any of their complaints about McNeil's behavior were made in writing and signed. Therefore, as currently alleged, the only protected activity upon which Plaintiffs can assert a PWA claim is their participation in the administrative investigation. Thus, such participation is a key fact with regard to the PWA claims and it was not alleged or even alluded to in any of the previous iterations of the Complaint. Thus, Plaintiffs' PWA claims, as currently asserted, do not relate back. Nevertheless, to the extent Plaintiffs can allege that their disclosure of information was in a signed writing to a local official, they may renew their relation back argument if necessary.

In addition, the City asserts that Plaintiffs failed to allege that they exhausted the administrative remedies with regard to the PWA. The PWA only requires exhaustion of administrative remedies under certain circumstances. The City does not assert that those circumstances exist, only that Plaintiff failed to allege whether or not they exist and, if so, whether or not Plaintiffs complied with the administrative requirements. To the extent Plaintiffs re-allege

their PWA claims, they shall include allegations regarding the exhaustion of administrative remedies.[9]

### C.      Negligent Supervision and Retention

The City asserts that it is immune from Plaintiffs' negligence claim because Florida's waiver of sovereign immunity exempts the state and its subdivisions from being held vicariously "liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).

The City is correct that Plaintiffs' claim for negligent supervision and retention (Count VII) asserts that McNeil was acting outside the course and scope of his employment. (Doc. 3 ¶ 182). However, the claim is not attempting to hold the City vicariously liable for McNeil's tortious conduct. Instead, the claim is based on alleged direct negligence by the City in supervising and retaining McNeil. *City of Boynton Beach v. Weiss*, 120 So. 3d 606, 610 (Fla. 4th DCA 2013) ("[N]egligent supervision and retention claim[s] involve[] the direct negligence of the City."); *Watson v. City of Hialeah*, 552 So. 2d 1146, 1148 (Fla. 3d DCA 1989) ("By its very nature, an action for negligent retention involves acts which are not within the course and scope of employment and allows recovery even when an employer is not vicariously liable under the doctrine of respondeat superior." (emphasis omitted)); *see also Mallory v. O'Neil*, 69 So. 2d 313, 315 (Fla. 1954) (noting that negligent supervision and retention "is grounded on negligence of the defendant [employer] in knowingly keeping a dangerous servant on the premises which defendant

---

[9] Because Plaintiffs' PWA claims are being dismissed, the Court declines to address the City's argument regarding compensatory damages. If it is necessary based on Plaintiffs' amended pleading, the City may reassert its argument.

knew or should have known was dangerous and incompetent and liable to do harm to the tenants" and does not "state a cause of action based on the doctrine of respondeat superior"). Accordingly, the City's sovereign immunity defense fails.

### D.      Negligent Infliction of Emotional Distress

The City moved to dismiss Plaintiffs' Negligent Infliction of Emotional Distress ("NIED") claim, arguing that it had immunity under Florida's Workers' Compensation law and that Plaintiffs failed to state a claim. In response, Plaintiffs move to "withdraw" their NIED claims "subject to the right to seek leave to amend to reassert it should discovery yield additional facts supporting the claim." (Doc. 30 at 29). Accordingly, Plaintiffs will be permitted to amend the TAC to omit the NIED claim. To the extent that Plaintiffs seek to reserve some right to reassert the claim, Plaintiffs can file a motion for leave to amend if they determine an amendment is necessary. The Court makes no rulings regarding whether Plaintiffs would be granted such leave.

## V.      MCNEIL'S MOTION TO DISMISS

### A.      Common Law Harassment

At the outset, McNeil argues that Plaintiffs' common law claims are actually claims for workplace harassment. However, simply because some of the actions complained of occurred in the workplace does not transform Plaintiffs' claims into ones of harassment. Plaintiffs' common law claims will be addressed as pleaded.

### B.      Sovereign Immunity

McNeil asserts that he is immune from suit with regard to Plaintiffs' invasion of privacy and assault claims. Section 768.28(9)(a), Florida Statutes, provides:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or

> his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

McNeil argues that Plaintiffs have failed to allege that he acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

As Plaintiffs acknowledge, they did not use those specific "magic words," but based on the facts asserted in the TAC, if proved, a reasonable jury could certainly conclude that McNeil acted with the requisite bad faith, malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Accordingly, the claims against McNeil, at this stage, will not be dismissed on the basis of sovereign immunity.

### C.      Invasion of Privacy and Intentional Infliction of Emotional Distress

Plaintiffs Zorn, Gilbert, Jordan, and Stein assert claims of invasion of privacy and IIED against McNeil. Under Florida law, the tort of invasion of privacy encompasses three categories of actions. *See Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1115 (Fla. 2008); *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). At issue here is the category of intrusion, which is defined as "physically or electronically intruding into one's private quarters." *Ginsberg*, 863 So. 2d at 162 (quotation omitted). Further, "the intrusion must be highly offensive to a reasonable person." *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1309 (M.D. Fla. 2010).

"[T]o state a cause of action for [IIED], the plaintiff must demonstrate that: 1) the defendant acted recklessly or intentionally; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's conduct caused the plaintiff's emotional distress; and 4) plaintiff's emotional distress was severe." *Johnson v. Thigpen*, 788 So. 2d 410, 412 (Fla. 1st DCA 2001). To satisfy the second factor, the defendant's conduct must be "so outrageous in character, and so extreme in degree, as

to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985).

        *1.    Zorn*

Viewing the facts in the light most favorable to Zorn, she states a cause of action for invasion of privacy and IIED. Zorn alleges that McNeil inundated her for eighteen months with sexually explicit phone calls—including McNeil engaging in sexual acts while on the phone—and text messages containing pornographic photographs and videos of McNeil, including videos of McNeil masturbating. Zorn further alleges that she received these calls and messages while at home and, taking all inferences in favor of Zorn, that McNeil knew she was at home when he initiated them. Thus the first aspect of invasion of privacy is satisfied—Zorn alleges that McNeil electronically intruded into her home, which is certainly "private quarters."[10]

The parties dispute whether a plaintiff must also allege conduct sufficient to satisfy the IIED outrageousness standard in order to state a claim for invasion of privacy. Additionally, McNeil argues that Zorn's IIED claim should be dismissed because it fails to allege facts sufficient to satisfy the outrageousness standard. The Court disagrees—Zorn has alleged sufficiently outrageous conduct by McNeil. For this reason, the Court need not determine whether invasion of privacy requires a lesser standard.

Although Florida courts have been "hesitant to find sufficiently outrageous conduct based solely on alleged acts of verbal abuse in the workplace," *Johnson*, 788 So. 2d at 413, Zorn's allegations reach beyond mere verbal harassment in the workplace. Notably, Zorn's allegations assert that McNeil continued his harassment of Zorn while she was in the privacy of her home,

---

[10] To the extent Zorn is alleging invasion of privacy and IIED for McNeil monitoring her and contacting her while she was at work, those allegations fail to state a claim for the same reasons as Gilbert's claims discussed below.

constantly sending her unwanted pornographic photos and videos and making explicit phone calls when she did not respond to those messages. Additionally, McNeil's harassment, as alleged, involved particularly vulgar content that went beyond verbal harassment. Accordingly, taking the facts in the light most favorable to Zorn, she has stated a claim for invasion of privacy and IIED against McNeil.

### 2. *Gilbert*

Unlike Zorn's allegations, Gilbert fails to state a claim for invasion of privacy or IIED. The only allegations regarding Gilbert that could be construed to have occurred outside the workplace are the allegations that McNeil sent her text messages. (Doc. 3 ¶ 66(c)). However, the content of these messages are alleged to include "general questions about what she was doing" as well as asking "if he could take out her and her daughter for dinner, ice cream, etc." (*Id.*). Even assuming these messages were sent to Gilbert while she was in a private place, such as her home, such conduct does not meet the level of offensiveness required to state a claim for invasion of privacy or IIED. *Oppenheim*, 695 F. Supp. 2d at 1308–10 (determining that "annoying and bothersome" debt collection phone calls made up to six times per day for approximately three months "did not rise to the requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy"); *Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1061 (Fla. 5th DCA 1991) (determining that two voicemails that "included the words, 'You're mine,' in the first call and, in the second call, an invitation to [the plaintiff] to perform a sexual act on the caller's person" failed to allege actions "so indecent and outrageous" as to state a claim for invasion of privacy).

The allegations of McNeil's actions at work—that he spent extensive time at her desk making her feel uncomfortable, went "into her office when she was[ not] there . . . to smell the

remnants of her scent," and left voicemails on her office phone saying "that he could [not] sleep and wanted to hear her soothing voice"—also fail to state a claim for invasion of privacy or IIED.

As to invasion of privacy, Gilbert has not alleged that, in doing these things, McNeil intruded into a private place. Generally, there is no expectation of privacy at a workplace. *Ginsberg*, 863 So. 2d at 162 (noting that invasion of privacy requires intrusion "into a 'place' in which there is a reasonable expectation of privacy" and determining that the defendant's sexual harassment at the plaintiff's workplace failed to state a claim); *Benn v. Florida E. Coast Ry. Co.*, No. 97-4403-CIV, 1999 WL 816811, at *8 (S.D. Fla. July 21, 1999) ("[T]here is usually no intrusion upon seclusion when a plaintiff is in a public place, such as her workplace."); *see also Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 727 (11th Cir. 2011) ("Florida law explicitly requires an intrusion into a private place and not merely into a private activity."). Further, Gilbert's allegations do not implicate the sort of unique circumstances necessary to find that there was a reasonable expectation of privacy in a public place. *See, e.g.*, *Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1561 (S.D. Fla. 1996) (looking up co-worker's skirt); *Stockett v. Tolin*, 791 F. Supp. 1536, 1556 (S.D. Fla. 1992) (male co-worker entering ladies' restroom).

As to IIED, these allegations fail to go beyond the verbal harassment in the workplace necessary to satisfy the outrageous conduct requirement for IIED. *See Goggin v. Higgins*, 8:13-cv-2068-T-24EAJ, 2013 WL 6244536, at *2 (M.D. Fla. Dec. 3, 2013) (noting that for an IIED claim based on sexual harassment in the workplace, the plaintiff must allege "offensive, non-negligible physical contact . . . coupled with persistent verbal abuse and threats of retaliation" (quoting *Vernon*, 912 F. Supp. at 1559)); *see also Ponton v. Scarfone*, 468 So. 2d 1009, 1011 (Fla. 2d DCA 1985) (determining that the defendant's "utterances" made while at work, which were

"designed to induce [the plaintiff] to join with him in a sexual liaison" were insufficient to state a claim for IIED).

>      3.      *Jordan and Stein*

Jordan and Stein both allege that McNeil intruded into their offices and posed stuffed animals in sexual positions, and that he removed keys from Stein's office, and otherwise tampered with and vandalized Stein's desk. All of these things occurred in the workplace and neither Stein nor Jordan have alleged any unique circumstances to indicate that they had a reasonable expectation of privacy.

Additionally, while the actions of McNeil were certainly distasteful, they fail to rise to the level of offensiveness necessary to state a claim for IIED. *See Benn*, 1999 WL 816811 at *1, 9 (determining that a co-worker placing "a dildo . . . on the [plaintiff's workstation]" failed to allege acts that "went beyond all possible bounds of decency").

>      4.      *Pooley*

Pooley alleges a claim for IIED but not for invasion of privacy. Pooley's claim is based on verbal harassment and retaliation in the workplace. (*See* Doc. 3 ¶¶ 77–92). Pooley fails to allege actions by McNeil that are sufficiently outrageous to state a claim for IIED. *See Lay v. Roux Labs., Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980) (holding that the use of "humiliating language, vicious verbal attacks, [and] racial epithets" in a work environment was insufficient to state a claim for IIED).

**D.     Assault**

Plaintiffs Zorn, Daley, Gilbert, Jordan, and Stein assert claims of assault against McNeil. Again, only Zorn states a claim. "An 'assault' is an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to

create a reasonable fear of imminent peril." *Sullivan v. Atl. Fed. Sav. & Loan Ass'n.*, 454 So. 2d 52, 54 (Fla. 4th DCA 1984) (citing *Lay v. Kremer*, 411 So. 2d 1347, 1349 (Fla. 1st DCA 1982)). "[M]ere words do not constitute an assault," *Lay*, 411 So. 2d at 1349; "it must be premised upon an affirmative act—a threat to use force, or the actual exertion of force," *Sullivan*, 454 So. 2d at 54.

Plaintiffs allege that McNeil created an environment of unease due to his aggressive, harassing behavior and his "erratic displays of temper and rage." (Pls.' Resp. to McNeil Mot. Dismiss, Doc. 27, at 17). Gilbert alleges that McNeil stood close to her and commented many times on how good she smelled, which made her feel uncomfortable. Daley similarly alleges that McNeil would make comments regarding how "how nice she or her uniform looked." Plaintiffs do not point to any specific incidents with regard to Jordan and Stein, relying on general allegations of McNeil's threatening manner. None of these allegations sufficiently establish that McNeil created a reasonable fear of imminent peril. *See Lawrence v. Wal-Mart Stores, Inc.*, 236 F. Supp. 2d 1314, 1336 (M.D. Fla. 2002) (granting summary judgment on the plaintiff's assault claim where the defendant made statements referencing shooting African Americans but where he "had no gun at the time, nor any mechanism to harm [the African American plaintiff]"); *Johnson v. Brooks*, 567 So. 2d 34, 35 (Fla. 1st DCA 1990) (determining, under the nearly identical criminal assault definition, that serious threats made over the phone, without more, failed to establish that the defendant "did any act which created a well-founded fear in [the plaintiff] that violence was imminent"); *c.f. Martinez v. Pavex Corp.*, 8:03-CV-1197-T-27, 2006 WL 1823430, at *8 (M.D. Fla. June 30, 2006) (determining that there was sufficient evidence for a reasonable person to determine that the defendant "directed overt acts towards [the plaintiffs] which created a well-founded fear that violence was imminent" where the defendant: "jumped on the ledge of [a

plaintiff's] truck" and screamed at the plaintiff "close to his face," "smashed his hard hat on the ground and grabbed a shovel from the back of [a plaintiff's] truck," and held the shovel in a threatening way, as though he was going to hit one of the plaintiffs, and actually hit that plaintiff's vehicle with the shovel).

Thus, the assault claims of Daley, Gilbert, Jordan, and Stein are due to be dismissed. However, because Plaintiffs assert that they can allege additional overt acts of McNeil that constitute assault, the dismissal of these assault claims will be without prejudice. Daley, Gilbert, Jordan, and Stein will be permitted to amend their assault claims.

Zorn, on the other hand, alleges that, along with McNeil's threatening behavior, he threw an object at her. This is sufficient to state a claim for assault. *See Lay*, 411 So. 2d at 1348–49 (overturning a directed verdict on the plaintiff's assault claim where the defendant's "appearance of rage" was coupled with a two-handed shove). McNeil's argument that Zorn's allegations are contradicted by her deposition testimony is inappropriate at this stage in the litigation.

### E.    Section 1983 and ADEA

McNeil asserts that Plaintiffs' § 1983 claims based on age discrimination must be dismissed because the ADEA is the exclusive remedy for age discrimination. The Eleventh Circuit has yet to address this issue; however, the Eleventh Circuit recently noted that "the majority of Circuit Courts of Appeal to address the issue have ruled that the ADEA precludes the filing of age discrimination claims under section 1983." *Duva v. Bd. of Regents of the Univ. Sys. of Ga.*, —F. App'x—, No. 15-14752, 2016 WL 3454155, at *2 (11th Cir. 2016) (collecting cases). Moreover, in *Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981), which is binding precedent,[11] the court

---

[11] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted all decisions of the former Fifth Circuit that were decided before October 1, 1981, as binding precedent. *Paterson*, was decided on May 8, 1981.

held that the ADEA was "the exclusive remedy for age discrimination in federal employment." *Id.* at 524. In doing so, the Court reasoned "by establishing the ADEA's comprehensive scheme for the resolution of employee complaints of age discrimination in federal employment, Congress clearly intended that all such claims of age discrimination be limited to the rights and procedures authorized by the Act." *Id.* at 525.

Plaintiffs have failed to explain why the reasoning in *Paterson* would not apply equally to this case. *See Collins v. Fulton Cty. Sch. Dist.*, No. 1:12-CV-1299-ODE-JSA, 2012 WL 7802745, at *23 (N.D. Ga. Dec. 26, 2012) ("Although *Paterson* limited its holding to age discrimination claims brought by federal employees, lower courts in this circuit have extended its ruling to cover claims brought by public employees at the state and local levels."); *see also Committe v. Bd. of Trs. of the Fla. State Univ.*, 4:15cv228-MW/CAS, 2016 WL 4942044, at *3–4 (N.D. Fla. Aug. 26, 2016), (discussing at length the relevant case law and recommending dismissal of the plaintiff's § 1983 claims because the ADEA provides the exclusive remedy for age discrimination) *adopted*, 2016 WL 4942015 (N.D. Fla. Sept. 15, 2016). Accordingly, Plaintiffs' § 1983 age discrimination claims will be dismissed.

## VI.    MOTION FOR A MORE DEFINITE STATEMENT

The City and McNeil each seek to dismiss certain claims, arguing that they constitute a shotgun pleading and that they cannot be answered without causing prejudice. These arguments are more accurately analyzed as seeking a more definite statement. (*See, e.g.*, Doc. 10 at 22 ("The City cannot . . . prepare an appropriate response to the allegations."); Doc. 9 at 22 ("It is impossible for McNeil to discern the precise constitutional theories that are being presented against him.")).

### A.    Legal Standard

"A party may move for a more definite statement of a pleading to which a responsive

pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "'[I]n the federal system, . . . motions for a more definite statement are not favored'" and "should rarely be granted." *Foster v. Dead River Causeway, LLC*, No. 6:14-cv-688-Orl-37KRS, 2014 WL 4059899, at *2 n.2 (M.D. Fla. Aug. 15, 2014) (quoting *Eye Care Int'l, Inc. v. Underhill*, 92 F. Supp. 2d 1310, 1316 (M.D. Fla. 2000)). "A motion for a more definite statement will only be required when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Campbell v. Miller*, 836 F. Supp. 827, 832 (M.D. Fla. 1993) (quotation omitted).

### B.    Public Records Act Claims

The City makes technical arguments regarding Plaintiffs' failure to specifically plead that they made a request for public records and whether or not the cell phone and computer allegedly containing public records were City-issued or personal. While Plaintiffs assert the current allegations are sufficient, they note that they can clarify any ambiguity. Because Plaintiffs are going to be permitted to file an amended pleading, they will be permitted re-plead their Public Records Act claim with more clarity.

### C.    Counts XVI through XIX

The City also asserts that Counts XVI through XIX should be dismissed as a shotgun pleading. Specifically, the City asserts that it cannot reasonably prepare a response because Plaintiffs improperly co-mingle claims. Specifically, each of the referenced Counts is asserted by more than one Plaintiff, and each Plaintiff's claim is based on a separate and distinct set of circumstances. The City does not argue that it cannot discern which facts form the basis of each Plaintiff's claim, only that each Plaintiff should have filed a separate claim. However, the TAC

clearly separates the facts by each Plaintiff, making it obvious which facts are being asserted by which Plaintiff. Accordingly, the City's Motion to Dismiss with regard to Counts XVI through XIX will be denied.[12]

### D.    Counts XXI through XV

McNeil makes the opposite argument as that of the City—each Plaintiff alleges § 1983 claims against McNeil in separate counts, but they incorporate all of their factual allegations. McNeil asserts that this makes it impossible for him to decipher what facts Plaintiffs actually rely on in support of their § 1983 claims. Although the Complaint is otherwise well-drafted and clear, the Court understands McNeil's difficulty in fully understanding which facts Plaintiffs rely on in their § 1983 claims. Accordingly, McNeil's Motion to Dismiss, construed as a motion for a more definite statement, will be granted, and Plaintiffs will be given the opportunity to more selectively reference the specific facts relied on in support of their § 1983 claims.

### VII.    CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.   William McNeil's Motion to Dismiss and/or Motion for More Definite Statement (Doc. 9) is **GRANTED in part** and **DENIED in part**.

   a.   The claims for IIED asserted by Pooley and Stein are **DISMISSED with prejudice**.

   b.   The claims for Invasion of Privacy asserted by Gilbert, Jordan, and Stein are **DISMISSED with prejudice**.

---

[12] To the extent the City asserts that Plaintiffs have failed to state a claim in Counts XVI through XIX, the City merely makes a passing statement that Plaintiffs "failed to adequately allege the elements of this cause of action." (Doc. 10 at 24). The City does not expand on this statement or cite any authority. The Court will not develop arguments on the City's behalf.

   c.  The claims for assault asserted by Daley, Gilbert, Jordan, and Stein are **DISMISSED without prejudice**. To the extent these Plaintiffs can assert overt acts by McNeil that created a reasonable fear of imminent peril in accordance with this Order, they may amend their claims.

   d.  To the extent Plaintiffs' § 1983 claims are based on age discrimination, those claims are **DISMISSED with prejudice**.

   e.  Counts XXI through XV are **DISMISSED without prejudice**. Plaintiffs may amend their claims to more specifically state the bases of their § 1983 claims against McNeil.

   f.  McNeil's Motion is **DENIED** in all other respects.

2.  The City of Casselberry's Motion to Dismiss (Doc. 10) is **GRANTED in part** and **DENIED in part**.

   a.  Plaintiffs' PWA claims fail to state a claim.

      i.  To the extent Plaintiffs fail to allege that they disclosed information on their own initiative "in a written and signed complaint," the PWA claims are **DISMISSED without prejudice**. Plaintiffs may amend their PWA claims to the extent they can sufficiently allege written and signed complaints.

      ii.  To the extent the PWA claims are based on their participation in the administrative investigation, the PWA claims are time-barred and **DISMISSED with prejudice**.

   b.  Plaintiffs' Negligent Infliction of Emotional Distress claims are **DISMISSED without prejudice**.

c.  Plaintiffs' Public Records Act claim is **DISMISSED without prejudice**. Plaintiffs may amend their Complaint to re-plead this claim with more clarity.

d.  The City's Motion is **DENIED** in all other respects.

3.  The Notice of Voluntary Dismissal (Doc. 60) filed by Karen Gilbert, construed as a Motion to Dismiss under Rule 15(a), is **GRANTED**. Insofar as Gilbert alleges claims in Counts III, IX, and XIII, they are **DISMISSED without prejudice**.

4.  **On or before October 13, 2016**, Plaintiffs may file a Fourth Amended Complaint in accordance with this Order. Plaintiffs should carefully consider this Order and the merits of their amended claims. Given the stage of this litigation, further amendment will only be granted upon a showing of good cause.

**DONE** and **ORDERED** in Orlando, Florida on September 29, 2016.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record